304 So.2d 381 (1974)
Aubrey N. SHIPMAN, Individually, and on Behalf of his minor children, Aubrey Glenn Shipman et al.
v.
Salvador TARDO, Individually and as Administrator of the Estate of his minor son, Russell Tardo, and their insurer, Security Insurance Company et al.
Timothy T. ODOM
v.
Salvador TARDO et al.
James R. DEAN
v.
Salvador TARDO et al.
Nos. 6317-6319.
Court of Appeal of Louisiana, Fourth Circuit.
August 1, 1974.
Order On Application for Rehearing September 10, 1974.
On Rehearing October 9, 1974.
Writs Refused November 8, 1974.
*382 Occhipinti, Tamberella & Grace, Christopher T. Grace, Jr., New Orleans, for plaintiffs-appellants, Aubrey N. Shipman and others.
Jackson & Hess, Leonard A. Washofsky, New Orleans, for plaintiff-appellee, Timothy T. Odom.
Pitard, Pitard & Porobil, Robert F. Pitard, New Orleans, for appellees, James R. Dean, Liberty Bell Cab Co. and Manchester Ins. & Indem. Co.
Bienvenu & Culver, Ernest L. O'Bannon, New Orleans, for defendants-appellants, Salvador Tardo, etc. and Russell Tardo and Security Ins. Co.
Before GULOTTA, BOUTALL and SCHOTT, JJ.
*383 SCHOTT, Judge.
These consolidated cases arose out of an accident which took place at about 8:15 in the morning of September 11, 1970, at the intersection of Common and Carondelet Streets in the City of New Orleans.
This intersection, in the heart of the business district, is controlled by electric semaphore signal lights which combine the normal control for vehicular traffic with signs commonly known as "Winky Lights" to control pedestrian movement. Carondelet Street is a one-way street for traffic moving east and measures over 40 feet in width. Common Street is a one-way street for traffic proceeding north and measures almost 26 feet wide. The collision occurred when a cab, operated by James R. Dean, on Carondelet Street struck an automobile, operated by Russell Tardo on Common Street, whereupon both vehicles went out of control with the result that Mrs. Aubrey N. Shipman and Timothy T. Odom, both pedestrians on the northeast corner of the intersection, were struck and injured. Mrs. Shipman died as a result of her injuries two days later.
The surviving spouse and three children of the deceased Mrs. Shipman brought suit against Tardo, his father, and their liability insurer, Security Insurance Company, along with Dean, the Liberty Bell Cab Company, with whom he was associated in the operation of his cab, and their insurer, Manchester Insurance and Indemnity Company. Likewise, Odom brought suit against the same two sets of defendants for his injuries. Each set denied liability and alternatively claimed contribution from the other set in the event that the negligence of both drivers were found to have caused the accident. Dean brought suit against the Tardos and their insurer for his damages and was met with a denial and a plea of contributory negligence.
In reasons for judgment, the trial judge found that the negligence of Russell Tardo was the sole cause of the accident and that his negligence consisted of traveling at an excessive rate of speed and running a red light at the intersection. After noting that the evidence and the testimony were conflicting with respect to speed and the condition of the lights, the trial judge said:
"The preponderance of credible evidence supports the finding that Mr. Russell Tardo was greatly exceeding the 25 miles per hour speed limit for Common Street, City Ordinance 828 MCS as amended, and that he ran the red light. The weight of the evidence supports the findings that Mr. Dean started up slowly after the light had turned green for driver and after looking for traffic approaching from Common Street, and finding the area clear."
The original judgments included awards in favor of Aubrey N. Shipman for $75,000, each one of decedent's three children for $17,500, Odom for $37,044.97, and Dean for $3,500, all against the Tardos and their insurer. After argument on motions for a new trial the award in favor of Aubrey N. Shipman was reduced to $60,000 and the total liability of Security Insurance Company to the Shipman group of plaintiffs was reduced to $50,000, the limit of its liability for injury to one person under its policy of insurance issued to Tardo.
From this judgment the Tardos and their insurer have appealed specifying error with respect to the court's findings on liability and on the basis that the amounts awarded to the Shipmans were excessive. Odom has appealed contending that his award was inadequate and that Dean, Liberty Bell and their insurer should have been held liable, and the Shipmans have appealed contending also that Dean, Liberty Bell and their insurer should have been held liable.

LIABILITY
Russell Tardo initially testified that he had been proceeding along Common approaching Carondelet at 25 miles per hour (although on cross examination he admitted that he could have been going as much as 33 *384 miles per hour) with a green light facing him; upon reaching the pedestrian crosswalk a few feet before the intersection the light changed from green to yellow; he proceeded across, and upon reaching the middle of the intersection Dean's cab struck his automobile; at the time of impact he was in the middle of Common Street and while there were many pedestrians in the area there were no vehicles immediately in front, behind or on the side of him; the impact on his automobile was from the driver's door to a point over the left rear wheel, or about in the middle of his car.
Dean testified that as he approached the intersection on Carondelet the light facing him at Common was red, whereupon he came to a stop in the right-hand lane with his front bumper just behind the pedestrian crosswalk; the light changed to green, he looked to his right and saw nothing coming so he proceeded into the intersection, whereupon he "seen this blur out of the corner of my eye, and my natural reaction, I just jerked back and went for the brake and about the same time we collided;" he had not seen the Tardo automobile before it appeared as a blur in his peripheral vision; he had been stopped about 15 feet back from the line of the Common Street curb, and because of the presence of the American Bank Office Building on the southwest corner located along and extending to the corner of the sidewalks of the two streets his view of traffic approaching from Common Street was limited to only one car length beyond the crosswalk at Carondelet Street and traversing Common Street.
Julian Richards testified that prior to the accident he was in his automobile on Carondelet, stopped for the red light at Common with Dean's cab on his right and a Volkswagon automobile on his left; he heard the noise of and observed the approaching Tardo vehicle about a quarter of a block from the intersection; when his light changed to green he did not move because he had no doubt that the Tardo car was going to continue across the intersection; but immediately upon the light changing Dean's cab moved forward with the result that the cab ran into the left side of Tardo's automobile in the middle of the intersection; while not certain where the Tardo car was when the light changed he was certain that Tardo ran the red light.
Jamie Wetzel, the driver of the Volkswagon on Carondelet, testified that she was stopped at the red light on Common Street to the left of Richards and Dean, that Dean ran the red light striking the Tardo car which she did not see until the accident.
Sidney Pissa testified that he had been walking on the south side of Carondelet toward Common and was confronted with a Don't Walk sign; as he was stopped he heard a noise to his right, looked down and saw the Tardo car "tearing along . . . moving much faster than the normal flow of traffic would be going in excess of that, way in excess of it;" before Tardo reached the intersection he heard the mechanism in the lights click, which he said meant the display of a caution light for Tardo, at which point Tardo was 75 feet from the intersection; because of Tardo's speed he could not stop and Pissa sensed that an accident was inevitable; the light changed to red before Tardo actually entered the intersection.
Odom, who was on the northeast corner of the intersection, said that he saw Tardo approaching at a speed he estimated to be 45 miles per hour; based upon his observation of the Winky Light, he was certain that Tardo would not enter the intersection on a green light and he was not reducing his speed; as Tardo was approaching the cab crept out into the crosswalk ahead of the other two automobiles which were standing still.
Gail Pinkham testified that from the northwest corner she began crossing Carondelet Street, obeying the Winky Light signal to Walk; as she was traversing Carondelet Dean's cab shot out in front of her causing her to back up, whereupon the *385 accident happened; she was starting to cross Carondelet when she saw Tardo's automobile already in the intersection.
The police officer testified over the objection of Tardo's counsel that he questioned Mrs. Shipman about twenty minutes after the accident occurred, and she told him that she was standing on the northeast corner when Tardo ran the red light, was struck by the cab, and the front of the cab struck her and came to rest against the building on the northeast corner.
It is apparent that there are a number of serious conflicts in the testimony of the witnesses. In argument other conflicts are pointed out such as testimony with respect to the location of the Richards' car which, according to him, was parallel to and in the middle of Dean's cab and the Wetzel automobile, but which is contradicted by the Pinkham testimony to the effect that there was not sufficient room between the Wetzel automobile and the Dean cab for a third automobile to fit. The argument is made that Pissa was biased because he was friendly with Dean and that Odom was confused about the condition of the lights governing the vehicles from his own observation of the Winky Lights and that his testimony with respect to Tardo's speed was unreliable because of the inaccuracy involved in judging speed of an oncoming object.
But happily it is not the function of this Court to resolve hopelessly conflicting testimony where the trial judge, who has seen the witnesses and heard their testimony, has made such a determination. His finding of negligence on the part of Tardo is amply supported by the testimony of several witnesses and will not be disturbed by us on appeal.
Tardo strenuously objected to the testimony of the police officer as to what Mrs. Shipman told him and the question is whether the statement was part of the res gestae and therefore an exception to the hearsay rule. In Micheli v. Toye Brothers Yellow Cab Company, 174 So.2d 168 (La. App. 4th Cir. 1965), this Court held that to constitute a part of the res gestae a statement "must not only be reasonably contemporaneous with the event, but must also be spontaneous and uncalculated . . . must be . . . under conditions prevailing during moments of tenseness. . ." It must be shown that the author of the statement was "precluded from coolly deliberating or designing . . ." From this it is clear that the characterization of a statement as a part of the "res gestae" is not a matter of counting the minutes from the event to the statement; rather, the principal consideration is the state of the author's mind at the time of the statement. In the instant case when the officer arrived at the scene he concerned himself first with Mrs. Shipman who was lying on the ground appearing to be seriously injured as indeed she was. Certainly her state of mind was such as to meet the requirements for the basis of a res gestae statement even though made 20 minutes after the accident. The objection was properly overruled.
While we have applied and followed the rules that the trial judge's calls with respect to the credibility of witnesses and that his factual findings will not be disturbed in the absence of manifest error, and therefore affirm his judgment with respect to the negligence of Russell Tardo, in the application of the same rules we cannot affirm his judgment with respect to his exoneration of Dean from negligence.
Dean himself testified that before he started from his stopped position when the light changed to green, he looked out Common Street and saw nothing. Not until the collision was imminent and inevitable did he first see Tardo as a blur out of the corner of his eye. He had been stopped 15 feet back from the curb and since the impact occurred 12 feet beyond the curb he traversed a distance of almost 27 feet before seeing this blur just before the impact. In the meantime, according to his own testimony, he could see a car *386 length beyond the crosswalk traversing Common Street while he was stopped, that crosswalk being about the same width as the crosswalk in front of him or 15 feet in width measuring from the Carondelet Street curb. The front of Tardo's automobile had thus traversed approximately 25 feet within his vision before entering Carondelet and 30 feet of Carondelet Street prior to impact, and yet Dean never saw anything of Tardo except a blur just before the impact. A driver who is stopped at a red light may not blindly enter an intersection at the moment the light turns to green. He is under a duty to make a proper observation of traffic on the street before proceeding. Mooring v. Pomeroy, 175 So.2d 435 (La.App. 2nd Cir. 1965). Likewise, in Watts v. Cooper, 277 So.2d 254 (La.App. 4th Cir. 1973), this Court recognized and applied the doctrine that the motorist who immediately proceeds upon a light changing to green will be deemed guilty of negligence constituting a proximate cause of an accident where, if he had exercised the slightest degree of observation and care, he could have avoided the accident.
In the last cited case it was held that the plaintiff was contributorily negligent in failing to look to her left to ascertain that the intersection was clear of moving traffic before she proceeded forward when her light changed from red to green. In the instant case, Dean says he looked but saw nothing coming on Common Street and his only excuse is that his vision of oncoming traffic was somewhat obstructed by the presence of the bank building on the corner. But considering the fact that Tardo was already right in front of him when he reached the middle of the intersection, accepting his own testimony that he was moving slowly from his stopped position thereby improving his ability to see to his right as he moved forward, it necessarily follows that he was negligent in failing to see Tardo's vehicle approaching if not already within the intersection ahead of him. This is especially so when we consider the testimony of Richards, with which the trial judge was impressed, to the effect that Richards knew the accident was inevitable and knew that he had to remain in his stopped position while Dean moved forward just on his right. We therefore find that Dean was negligent in failing to see what he could or should have seen and we conclude that the trial judge erred in exonerating Dean from negligence. Such negligence was a proximate cause of the injuries to Odom and Mrs. Shipman, making Dean, Liberty Bell and their insurer jointly liable for their injuries along with the Tardos and their insurer. It follows that the judgment in favor of Dean against the Tardos and their insurer must be reversed upon a finding of contributory negligence on Dean's part.

QUANTUM AS TO THE SHIPMANS
The Tardos and their insurer contend that the trial judge abused his discretion in the amounts of the awards made to the Shipmans. In his original judgment the trial judge awarded $75,000 to the surviving spouse and $17,500 to each of the children of the deceased. After a new trial limited to reargument, the trial judge reduced the award to Mr. Shipman to the sum of $60,000. We do not known whether the amount awarded to Mr. Shipman includes any loss of income or what portion was allocated to loss of consortium as opposed to his share of the pain, suffering and fear suffered by Mrs. Shipman before she died. Special damages were stipulated to be almost $7,000, leaving the balance of $53,000 to cover these other elements. Defendants refer to the Shipmans' trial memorandum in which they itemized Mr. Shipman's loss of consortium as being worth $30,000, his share of decedent's pain and suffering to be worth $5,000, and loss of past and future income to be worth over $67,500. The argument is made that the trial judge either included in the judgment a substantial amount for loss of income, which is asserted to be an error of law, or twice as much as the plaintiff himself contends *387 the loss of consortium was worth, which is argued to be a clear-cut abuse of discretion on the part of the trial judge. Defendants also rely on LeBlanc v. Blanchard, 266 So.2d 918 (La.App. 4th Cir. 1972), in which this Court increased an award for plaintiff's loss of his wife to $30,000, contending that that is the maximum the trial judge could have given without abusing his discretion in making an award for loss of consortium or without adding loss of income.
First, as to the argument that the trial judge was limited by itemized figures included by plaintiff's counsel in his post-trial memorandum, this came at a time when the case had already been tried and the judge had already formed many impressions which he would subsequently incorporate in his judgment. The memorandum was not a pleading and, in contrast to the figures in the memorandum, the petition itemizes claims for loss of companionship $100,000 and the husband's share of the pain and suffering of his wife $50,000. Even if the award did not include any loss of the wife's income the amount was well within the range sought by plaintiff in his petition.
Parker v. Smith, 147 So.2d 407 (La.App. 2nd Cir. 1963);, is relied upon by defendants with respect to Mr. Shipman's claim for the loss of his wife's income. There the court held that the husband had no such claim because the wife had been working for the community which had existed between the spouses and was terminated at the time of her death; that any claim for her services would be a claim by the community and not by the husband; and that since the community was terminated with her death the claim was extinct. We do not subscribe to those views. LSA-C.C. Art. 119 provides that the husband and wife owe to each other mutual fidelity, support and assistance. If a wife during her lifetime was providing such assistance in the form of a financial contribution to the running of the household and the covering of expenses for such things as recreation and entertainment, the husband has suffered a personal loss as a result of being deprived of that support and assistance. Under LSA-C.C. Art. 2315 every act whatever that causes damage to another obliges the tort feasor to repair the damage, and regardless of the legal status of income earned by spouses as belonging to the community, if a husband has an actual loss as a result of the lost earnings of his wife, under Art. 2315 he is entitled to repair of that damage.
In the instant case, Mr. Shipman was earning about $8,000 per year at the time of his wife's death, and she was earning $425 per month. He testified that they put all their money together "and spent it as necessary to pay the bills, to live and eat." With the death of Mrs. Shipman his rent and the maintenance and upkeep on his home remained much the same as did his utility bills, and other conceivable expenses. To say that Mr. Shipman suffered no loss as the result of his wife's death under these circumstances would be to conclude that, where he and his wife were living on an annual income of $13,000 and where $5,000 contributed by his wife to the family income was lost, he would be deprived of nothing because all of his expenses would be reduced in the same proportion as the total income of the family was reduced by the loss of Mrs. Shipman's salary. We believe this to be an absurdity and conclude that Mr. Shipman did suffer damage as a result of the loss of his wife's income, and that some figure to compensate him for that loss and was properly included in the award made to him.
Thus, we are left with something under $53,000 for Mr. Shipman's loss of his wife's love and affection and companionship and his share of her own pain and suffering before she died. The Shipmans were married in 1944 and Mr. Shipman summarized his feelings for her with the words that "she was just all there was *388 for me." She was 43 years of age at the time of her death, was in good health, was gainfully employed and Mr. Shipman could have anticipated many years of happiness with his wife. Defendants cite LeBlanc v. Estate of Blanchard, 266 So.2d 918 (La. App. 4th Cir. 1972), in which this Court increased an award to a surviving husband for the death of his 38 year old wife from $10,000 to $30,000. Doubtless, a reading of the thumb-nail sketch of the relationship between the LeBlancs in the cited case and that of the Shipmans in the instant case would suggest that the cases are similar, but the similarities are not nearly as significant as the fact that the trial judge in the instant case observed Mr. Shipman on the witness stand, heard his testimony and formed impressions which led him to exercise his discretion in making an award to him for the death of his wife. The cases are now legion for the proposition that appellate courts should not alter awards for a general damage unless there is a clear showing of abuse of a great discretion afforded to the trial judge in making such awards, e. g., Boutee v. Hargrove, 290 So. 2d 319 (S.Ct. 1974). We note further this award for general damages also included a share of Mrs. Shipman's pain, suffering and fear of death. After the accident she was found to be suffering from severe shock, a fracture of the left thigh, left femur and pelvis. She was bleeding internally and during exploratory surgery she was found to have a ruptured kidney which was removed. The following day she was again operated on and a ruptured bladder was discovered and repaired. She died on September 13 at 3:45 PM after continued respiratory problems, bleeding and ultimate heart failure. Except for the times she was under general anesthesia during the operations she was in great pain. Clearly the trial judge included in his award a significant amount for her pain, suffering and fear of death under these circumstances.
Mrs. Shipman's three children, Laura, Aubrey and John were 24, 20 and 16 respectively at the time of their mother's death. Laura had been married and divorced with three children, Aubrey was in the Airforce in Tokyo, and John was a high school student still at home with his parents. Each child was awarded $17,500 for a loss of the mother and for each child's share of the mother's pain and suffering. Citing LeBlanc v. Estate of Blanchard, supra, defendants contend that the awards are beyond the range of the Court's discretion and that just as this Court adjusted an abuse on the low side in LeBlanc it should adjust the abuse on the high side in the instant case. The law requires that we adjust any abuse whether high or low if one is found, but our review of the latest decisions of the Supreme Court on this subject convinces us that there must be a considerable variation between awards in cited cases and the award under consideration before it can be said that a trial judge has abused his discretion in making such an award. We do not find that such a wide range exists in this case. Finally, defendants contend that logic requires that the 16 year old boy should receive more than the elder siblings, and they suggest a $2500 differential between younger on the one hand and the elder two on the other hand. This very suggestion demonstrates the difficulty confronting appellate courts in considering whether the discretion of a trial judge has been abused in making an award for general damages. Who can say that a 16 year old son has necessarily suffered a greater loss on the death of his mother than a 20 year old son. Who can say that that 16 year old son has suffered a greater loss than the daughter has on the loss of her mother. These things do not admit of mathematical solutions and it is difficult to weigh and measure human emotions by means of logical equations. In fact, the whole business of putting dollar amounts on such losses boggles the thinking process of the logical *389 mind. In the instant case, we are rescued from the task because we find that the awards made by our esteemed brother below are within the sound discretion afforded him under the jurisprudence.

QUANTUM AS TO ODOM
Odom contends that his award of $30,000 (out of a total award of $37,044.97 including special damages) was inadequate, relying primarily on Goudeau v. Texas Gas Transmission Corporation, 225 So.2d 679 (La.App. 3rd Cir. 1969).
Odom suffered a comminuted fracture of the left femur, a fracture of the medial condyle of the fright femur, and multiple contusions and abrasions. After the accident he was taken to surgery where a closed reduction of the fractured right knee was accomplished, a pin was inserted in the right tibia, a cast was applied to the other knee and he was placed in traction for six weeks. On October 23 he was again subjected to surgery so that the pin could be removed from the right tibia, he was placed in a spica cast from his chest to his toes, and he left the hospital for the first time on October 24. Until his readmission to the hospital on November 22 he was bedridden; at the second hospitalization the spica cast was removed and he was administered physical therapy; he began partial weight bearing and left the hospital on December 5. He progressed through physiotherapy and the use of a walker, then two canes, until he was discharged on July 13 still using a cane. His disability at trial was rated as a 30% partial permanent disability in one lower extremity and 20% in the other, having developed arthritis in the left leg. At the time of the accident he was 61, in good health, and employed as an international representative and regional manager of a labor Union. As the result of the accident his work and recreational activities were severely curtailed.
Doubtless his award was low in a comparison with the Goudeau case, but for the reasons stated above we cannot say that the trial judge abused the great discretion afforded him in making the award. Able counsel for Odom cites cases such as Laird v. State Farm Insurance Company, 290 So.2d 343 (La.App. 4th Cir. 1974) and Tripkovich v. Winn-Dixie Louisiana, Inc., 284 So.2d 80 (La.App. 4th Cir. 1973), where awards of $35,000 were made for similar injuries and he refers to our inflationary economy to support an increase from $30,000 to $40,000. The trial judge undoubtedly was aware of these economic conditions when he made his award, and we are concerned with the amount of the award as of the time of the plaintiff's loss and not at this point in time some years later. In any event, even if we were to agree that an award of $40,000 would be more appropriate under the circumstances, we cannot say that the trial judge abused his discretion in awarding only $30,000 to plaintiff.

DECREE
Therefore, the judgments in favor of Aubrey N. Shipman, Aubrey Glenn Shipman, John M. Shipman, Laura Shipman and Timothy T. Odom against Salvador Tardo, Russell Tardo and Security Insurance Company are affirmed.
The judgments in favor of James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company against Aubrey N. Shipman, Aubrey Glenn Shipman, John M. Shipman, Laura Shipman and Timothy T. Odom, dismissing their claim, are reversed.
The judgments dismissing the third-party petitions of Salvador Tardo, Russell Tardo and Security Insurance Company against James R. Dean, Liberty Bell Cab Company, and Manchester Insurance & Indemnity Company are affirmed to the extent that the principal claim of these third-party plaintiffs against the third-party defendants for damages was dismissed, but are reversed insofar as their alternative demands for contribution were dismissed.
*390 Accordingly, it is ordered, adjudged and decreed that there be judgment in favor of Aubrey N. Shipman and against Russell Tardo, Salvador Tardo, Security Insurance Company, James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company, jointly and in solido, in the sum of $60,000 with legal interest from date of judicial demand until paid, except that the liability of Security Insurance Company is limited with respect to this plaintiff to the sum of $26,666.66 plus legal interest from date of judicial demand and costs;
It is further ordered, adjudged and decreed that there be judgment in favor of Aubrey Glenn Shipman, John M. Shipman and Laura Shipman and against Salvador Tardo, Russell Tardo and Security Insurance Company, James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company, jointly and in solido, in the sum of $17,500.00 for each of the plaintiffs, with legal interest from date of judicial demand, except that the liability of Security Insurance Company is limited with respect to each of these three plaintiffs to the sum of $7,777.78 plus legal interest from date of judicial demand and costs;
It is further ordered, adjudged and decreed that there be judgment in favor of Timothy T. Odom and against Salvador Tardo, Russell Tardo, Security Insurance Company, James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company, jointly and in solido, in the sum of $37,044.97, with legal interest from date of judicial demand until paid and costs;
It is further ordered, adjudged and decreed that there be judgment in favor of Salvador Tardo, Russell Tardo and Security Insurance Company, as third-party plaintiffs, and against James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company for one-half the amount for which these third-party plaintiffs are liable to Aubrey N. Shipman, Aubrey Glenn Shipman, John M. Shipman, Laura Shipman and Timothy T. Odom;
It is further ordered, adjudged and decreed that there be judgment in favor of Salvador Tardo, Russell Tardo and Security Insurance Company and against James R. Dean, dismissing his suit at his cost.
The costs of this appeal are to be divided equally between Salvador Tardo, Russell Tardo and Security Insurance Company on one hand and James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company, on the other.
Affirmed in part.
Reversed in part.

ORDER ON APPLICATIONS FOR REHEARING
The Court considering the applications for rehearing;
It is ordered that the applications for rehearing filed by James R. Dean, Liberty Bell Cab. Co., Salvador Tardo, Russell Tardo and Security Insurance Company in these proceedings are denied;
It is further ordered that the application for rehearing filed in these proceedings by Manchester Insurance and Indemnity Company is granted with the understanding that the Court will consider argument addressed only to the issue of the limits of the policy issued by Manchester Insurance and Indemnity Company. Such arguments are to be on briefs submitted not later than September 20, 1974.

ON APPLICATION FOR REHEARING
PER CURIAM.
We granted rehearing on the application of Manchester Insurance & Indemnity Company which complained that the judgments in favor of plaintiffs are in *391 excess of the limits of its policy. Since the policy has limits of $25,000 of liability for one person and $50,000 limits of liability for one accident our decree must be modified so as to prorate such $25,000 limit among those plaintiffs recovering for the loss of Mrs. Tardo and to limit Manchester's liability to Timothy T. Odom.
Accordingly, our original decree is amended so that the first three paragraphs remain unchanged but starting with the fourth paragraph it is to read as follows:
Accordingly, it is ordered, adjudged and decreed that there be judgment in favor of Aubrey N. Shipman and against Russell Tardo, Salvador Tardo, Security Insurance Company, James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company, jointly and in solido, in the sum of $60,000 with legal interest from date of judicial demand until paid, except that the liability of Security Insurance Company is limited with respect to this plaintiff to the sum of $26,666.66 plus legal interest from date of judicial demand and costs, and the liability of Manchester Insurance & Indemnity Company is limited to $13,333.33 plus legal interest from date of judicial demand and costs;
It is further ordered, adjudged and decreed that there be judgment in favor of Aubrey Glenn Shipman, John M. Shipman and Laura Shipman and against Salvador Tardo, Russell Tardo and Security Insurance Company, James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company, jointly and in solido, in the sum of $17,500.00 for each of the plaintiffs, with legal interest from date of judicial demand, except that the liability of Security Insurance Company is limited with respect to each of these three plaintiffs to the sum of $7,777.78 plus legal interest from date of judicial demand and costs, and the liability of Manchester Insurance & Indemnity Company is limited with respect to each of these three plaintiffs to the sum of $3,888.89 plus legal interest from date of judicial demand and costs;
It is further ordered, adjudged and decreed that there be judgment in favor of Timothy T. Odom and against Salvador Tardo, Russell Tardo, Security Insurance Company, James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company, jointly and in solido, in the sum of $37,044.97, with legal interest from date of judicial demand until paid, except that the liability of Manchester Insurance & Indemnity Company is limited to $25,000 plus legal interest from date of judicial demand and costs.
It is further ordered, adjudged and decreed that there be judgment in favor of Salvador Tardo, Russell Tardo and Security Insurance Company, as third-party plaintiffs, and against James R. Dean, Liberty Bell Cab Company and Manchester Insurance & Indemnity Company for contribution of one-half the amount for which these third-party plaintiffs are liable to Aubrey N. Shipman, Aubrey Glenn Shipman, John M. Shipman, Laura Shipman and Timothy T. Odom, except that the liability of Manchester Insurance & Indemnity Company is limited to a contribution of $25,000 with legal interest and costs with respect to its combined liability in solido to Aubrey N. Shipman, Aubrey Glenn Shipman, John M. Shipman and Laura Shipman.
In all other respects, our original decree is reinstated.
Rehearing granted to Manchester Insurance & Indemnity Company.
Original decree amended.
All other applications denied.