499 So.2d 344 (1986)
Emerza TOUPS and Richard S. Toups, Sr.
v.
SEARS ROEBUCK AND COMPANY, INC. et al.
No. CA-2055.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1986.
Writ Granted January 30, 1987.
*345 John J. McCann, James A. McCann, McCann, McCann, Gennusa, Thomas L. Giraud, Salvador Cusimano, Charles A. Verderame, Giraud, Cusimano and Verderame, New Orleans, for plaintiffs-appellants.
Lawrence J. Ernst, Christovich and Kearney, New Orleans, for defendant-appellee Sears Roebuck and Co. Inc.
John C. Combe, Jr., Madeleine Fischer, Jones, Walker, Waechter, Poitevent, Carrere and Denegre, New Orleans, for defendant-appellee State Industries Inc.
Before SCHOTT, BARRY and WILLIAMS, JJ.
*346 SCHOTT, Judge.
Shawn M. Toups, a three year old, was badly injured in a flash fire which occurred in a shed attached to the rear of his grandmother's house. The child's parents brought this products liability claim against Sears Roebuck and Company, the vendor of a water heater and a lawnmower, alleged to have been the immediate cause of the fire, and against State Industries, Inc., the heater's manufacturer. The case was tried to a jury and submitted on special verdicts which found that neither the heater nor the lawnmower was defective. In this court plaintiffs argue that the evidence was sufficient to prove the heater was defective because of no warning against storing gasoline in proximity to it but that they were deprived of a verdict because of erroneous jury instructions and evidentiary rulings by the trial judge.
Attached to the rear of the house occupied by Shawn's family was a shed described as a "lean-to". The "wall" adjacent to the rear of the home ended three feet from the ground in order to accommodate crawl space under the house; one side wall was louvered; and the rear was open except for two louvered panels. A water heater was in the corner of the shed. The family stored a lawnmower there and kept a gasoline can on a shelf across from the heater. On the day of the accident Shawn went outside after dinner to ride his tricycle. When his grandmother turned on the hot water to wash the dishes she and the others present heard an explosion. They found that Shawn had been severely burned in a fire in the shed.
Shawn's mother testified that the lawnmower was stored in the shed but was not placed up against the heater; the gasoline can was likewise stored in the shed but on a shelf across from the heater; the cap was kept tightly on the can; there was sufficient ventilation in the shed to prevent a fire; and she was aware of the danger of gasoline vapor coming into contact with the heater's flame.
At some point during the day of the fire Shawn's brother, Richie, who was twelve years of age at the time, cut the grass with the lawnmower and had put gasoline from the can into its tank. Richie did not testify, but his friend, Kevin Pailet, another twelve year old, testified concerning their activities including the fact that Richie told him he had returned the can to the shelf after using it. Kevin said he was aware of the danger of leaving the can where Shawn might get to it.
Milton Dauterieve, a captain on the New Orleans Fire Department, testified he came to the scene in response to the alarm. He found the lawnmower about three feet from the heater and the can with its cap open a foot or two from the heater. Qualified as an expert he expressed the opinion that gasoline had spilled and run under the water heater leading to the ignition of the vapors by the pilot.
A police officer who went to the scene shortly after the fire was brought under control testified he saw a gasoline can lying flat on the ground with a hole in its cap.
A next door neighbor testified that he ran to the shed shortly after the fire started, saw two other neighbors trying to extinguish the fire with a garden hose, and also saw a gasoline can on the floor.
Another neighbor also testified that he saw the fire before the fire department arrived and observed the lawn mower burning in the shed and a gasoline can standing on the floor.
Plaintiffs' expert, Leonard C. Mandell, after considering the condition of the gasoline can and the lawnmower after the fire, was of the opinion that gas leaked from the machine and the vapors traveled on the floor toward the heater. He considered the heater defective because it had no warning against the danger of storing flammables in proximity to it, the lawnmower defective because its gas tank was plastic providing for the possibility of a leak, and the heater defectively installed because it was only two inches from the floor instead of eighteen inches as required. In his opinion *347 gasoline was not being poured when the fire started.
Plaintiffs also produced another expert, Frank Fowler whose opinions were generally the same as Mandel's.
On the other hand, Kevin Pailet said they had no problems with the lawn mower and he would have noticed if there was a gasoline leak in the machine.
Experts called by defendants contradicted Mandel and Fowler. They said the heater was properly installed and that the probable cause of the fire was pouring gasoline into the lawnmower in close proximity to the heater.
In this court plaintiffs assign four errors which they contend caused the jury to reach an erroneous conclusion: 1) an erroneous jury charge of negligence in a strict liability case; 2) "allowing negligence to taint the entire trial, when it forms no part of a `Products' case, and especially where a three year old can be guilty of neither negligence nor contributory negligence" 3) the exclusion of a report offered by plaintiffs; and 4) permitting the fire department captain to give hearsay testimony.
As to the first and second assignments, the trial judge properly instructed the jury on the law of products liability stating that if the product is proven defective the plaintiff need not prove any particular negligence on the part of the manufacturer. However, a discussion of negligence was also properly included in the charge because there were third party demands by defendants against the child's parents for lack of supervision of the child and for improperly storing the gasoline; and because the negligence of Richard Toups, Jr. in his handling of the gasoline can when he cut the grass was an issue in the case. The trial court's inclusion of the discussion of negligence in his charge to the jury was warranted for the same reason as in Chappuis v. Sears, Roebuck & Co., 349 So.2d 963 (La.App. 1st Cir.1977), rev'd on other grounds, 358 So.2d 926 (La.1978). These negligence instructions, as in the cited case, were properly related to the negligence of plaintiffs and Richie Toups, Jr. and were separated and distinguished from the law relating to the main demand.
As to plaintiffs' contention that the jury was misled as to the fault of the three year old victim, the trial judge properly instructed the jury that Shawn could not be legally at fault for his own injuries because of his age. On the other hand, Shawn's conduct was an issue to be considered by the jury in deciding whether the accident resulted from a defect in the heater or from the gasoline can being negligently left on the floor by his brother in combination with the lack of supervision by his parents. If the jury concluded these things caused the accident they properly found no defect in the product. Even though it was unnecessary for plaintiffs to prove negligence against defendants since this was a products liability case, defendants could introduce the negligence of the brother and parents of the child to show it was not a defect in the product which caused the injury. Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985).
Plaintiffs next contend that the trial judge erred in excluding from evidence an article from NEISS (National Electronic Injury Surveillance System) News. This article, which is a part of the record by proffer, summarizes a study of 191 injuries associated with water heaters during 1973. It estimates that there were 3,800 such injuries nationwide that year and that a substantial number of such accidents were caused by the heaters' ignition of gasoline when gasoline containers in close proximity to heaters were knocked over by young children. The document was properly excluded. It was hearsay because it was offered to prove the truth of its assertions without providing defendants with the opportunity of cross examining its author. Oalmann v. Brock and Blevins Co., Inc., 428 So.2d 892 (La.App. 1st Cir. 1983). Furthermore, the article did not qualify as a learned treatise because the witness, plaintiffs' expert, who referred to and relied upon the article was unable to say how and from where the statistics were *348 gathered or to ensure that the document was reliable. Finally, the article was irrelevant. There was no question in anyone's mind that it was dangerous to store gasoline close to a water heater. The child's mother knew it and Kevin Pailet and Richie Toups knew it. If the can had been properly stored the child could not have reached it. The evidence was virtually unanimous that the can was found on the floor after the tragedy. As to plaintiffs' theory of a leaking tank on the lawnmower this is pure speculation. There was no evidence to this effect. There is no manifest error in the jury's conclusion that the lawn mower was not defective. Thus, in the absence of evidence that this gasoline was improperly stored by plaintiffs and in the face of evidence that these plaintiffs knew it had to be properly stored, an article linking a great number of flash fires to improper storage has no probative value and is irrelevant.
The last error assigned by plaintiffs concerns the testimony of Captain Dauterieve as to a statement by the child's grandmother, Mrs. Spatafora, that the children had gone out to cut the grass just before the fire. Dauterieve testified that Mrs. Spatafora made this statement just after the fire and she was visibly emotional and upset at the time. The statement was properly admitted under the excited utterance exception to the hearsay rule. Shipman v. Tardo, 304 So.2d 381 (La.App. 4th Cir.1974).
However, plaintiffs argue this statement was especially objectionable because it constituted double hearsay, first, as to Mrs. Spatafora's statement coming in through Dauterieve's testimony, and, second, as to the children's having gone to cut the grass. However, the statement does not purport to prove that the children told Mrs. Spatafora they were going out to cut the grass just before the fire started. It simply conveys Mrs. Spatafora's impression that they were cutting the grass at this time. We are not persuaded that the statement could not be admitted as an excited utterance.
In any event, even if Dauterieve's testimony was inadmissible, we are satisfied that the trial court's ruling constituted harmless error at worst. The issue was whether this accident was caused by a defective heater or not. The evidence was convincing that the accident happened because a can of gasoline was left on the floor where this three year old could get to it and not on the shelf across the room where plaintiffs knew it had to be to ensure its safety. The jury found no defective heater. They would have reached this conclusion whether they thought the boys cut the grass early in the day and left the gasoline on the floor or the boys themselves were pouring the gasoline in close proximity to the heater while the three year old Shawn was present.
We have concluded that plaintiffs' assignments are without merit and the judgment is affirmed.
AFFIRMED.