WICKER, Judge,
dissenting.
I respectfully dissent to the majority opinion in this case. In my view, the trial afforded plaintiff was fundamentally fair and the errors complained of do not warrant reversal.
Appellant contends that on re-direct examination the trial judge did not allow Dr. Nix to be questioned regarding causal connection between an internal accumulation of the chemical and its effect on the optic nerve. The lower court sustained the objection on the ground that Dr. Nix’s opinion should be based on probable medical causation and not a possible one.
Plaintiffs attorney acquiesed in the court’s ruling by failing to object for the record and because he failed to make a proffer of proof. (See TR 1731). In the case of McLean v. Hunter, 495 So.2d 1298, 1305 (La.1986) the court held that failure to object and make a proffer of proof at the trial level precludes counsel from raising the issue before an appellate court.
Additionally, I find Dr. Nix’s testimony to be highly speculative. Dr. Nix indicated that he had not reached a conclusion as to what specific medical disease plaintiff suffered from. Also, he found some evidence of arteriosclerosis, which according to his testimony is the most common cause of central retinal vein occlusion. Dr. Nix had testified at length before finally stating his conclusion as to whether chemical fumes could affect the optic nerve and his answer was “It’s in the realm of possibility but I’ve never seen it.” The majority has cited the case of IMC Exploration Co. v. Henderson as the applicable law on the subject as follows: “Proof that something is possible is of little probative value as to an ultimate issue of fact unless it is established with reasonable certainty that all other alternatives are impossible.” In this case that certainly has not been done. Arteriosclerosis is a definite possibility. Many cases of central retinal vein occlusion arise from unknown causes according to Dr. Nix. Therefore, I feel that the trial judge was clearly within the discretion extended to him for refusing to allow the testimony of Dr. Nix on re-direct examination.
With regard to Dr. Moel’s testimony, it is to be noted that Dr. Moel stated that he was a general ophthalmologist and referred plaintiff to Dr. Nix “Because Dr. Nix is a retinal specialist and I was a general ophthalmologist.” (Vol. 9, page 173). Further, Dr. Moel was unable to come up with any medical explanation for Mr. Carpenter’s condition and the trial judge excluded Dr. Moel’s testimony regarding certain literature and articles, much of which related to animal studies conducted by others in the 1920’s. I be *428 lieve that the lower court acted properly in so doing because the literature and articles referred to by Dr. Moel had not been recognized as “learned treatises” as required to be an exception to the hearsay rule. Toups v. Sears, Roebuck and Co., 499 So.2d 344, 347 (La.App. 4th Cir.1946). Additionally, Dr. Moel testified that he had no first hand knowledge as to I — I—I trichloroethane. He was not an expert in chemistry or toxicology. He could not testify as to any probable causal relationship between the chemical and the injury. He could only discuss possibilities based on the research mentioned above. The trial court’s ruling on the competence of the expert involved should not be disturbed by this court unless the error is clear. Roper on behalf of Roper v. Gelsomine, 507 So.2d 868, 871 (La.App. 5th Cir.1987).
The district judge was well within the discretion afforded him in not allowing Dr. Alexander to answer certain questions as to the causal relationship between the solvent and the plaintiffs blindness. As an expert in the field of occupational medicine, he was not an expert in ophthalmology and/or chemistry. Dr. Alexander’s lack of expertise on the subject matter is supported by the record and should not be disturbed by this court.
Additionally, the testimony of Drs. Moel and Alexander has been proffered at length and this court is fully award of what their testimony consists of. This case was tried for two weeks and this court is under a mandate by the Louisiana Supreme Court to decide the case under these circumstances rather than remand it. Gonzales v. Xerox, 320 So.2d 163 (La.1975). We have sufficient facts in the record of this case for us to make a determination of the issues involved.
Finally, the decree of the majority opinion sets aside the judgment of the trial court and remands the case for a new jury trial. The action of the majority constitutes a reversal of the jury verdict and the written judgment of the district court and the Louisiana Constitution mandates that this case should be decided by a five-judge panel. The Louisiana Constitution, Article V, Section 8(B) states:
A majority of the judges sitting in a case must concur to render judgment. However, when a judgment of a district court is to be modified or reversed and one judge dissents, the case shall be rear-gued before a panel of at least five judges prior to rendition of judgment, and a majority must concur to render judgment.
In the case of Virgil v. American Guaranty and Liability Insurance Co., et al, 512 So.2d 1235 (La.App. 5th Cir.1987), the majority on this court styled its decree as “Amended, and as Amended Affirmed”, when it rejected plaintiff's claim for further workman’s compensation benefits. One judge concurred in part and dissented in part. Writs were applied for and granted by the Louisiana Supreme Court. Virgil v. American Guaranty and Liability Insurance Co., et al, 514 So.2d 1169 (La.1987). The Louisiana Supreme Court ordered this court to invoke a five-judge panel in spite of the language of the decree.
I, therefore, dissent.