HAWTHORNE, Justice.
 

 Defendant, charged in a bill of indictment with the crime of murder, was found guilty of manslaughter and sentenced to serve a term at hard labor in the state penitentiary. From this conviction and sentence he has appealed.
 

 During the course of the trial the defense called Dr.- E. H. Maurer, a graduate of the Tulane University School of Medicine, who had been practicing his profession at the time of the trial for a period in excess of 26 years. During this period of time he was associated with the Departments of Obstetrics and Gynecology of the Tulane School of Medicine for three years; with the Department of Surgery, Louisiana State University School of Medicine for four years, and with the Department of Orthopedics, School of Medicine, for 14 years. His medical studies at Tulane included a course in pathology. This doctor testified that he was a general practitioner and was not a specialist in any particular field of medicine.
 

 During the course of his examination he was asked the following question- by counsel for the defendant:
 

 “Q. Doctor, if an autopsy revealed there was an acute right cardiac dilatation, contusions, discoloration around the fold in neck and base of skull from ear to ear, would that, could that be from a disease, such as heart trouble ? ”
 

 Counsel for the State objected to the question on the ground that the doctor had qualified as a general practitioner and not as a heart specialist. The court sustained' the objection, and the witness was not permitted to answer the question. Counsel for defendant thereupon reserved a bill of exception.
 

 The trial judge informs us in one of his per curiams that the cause of death was. an issue throughout the case, the State contending that the deceased died as a result of strangulation at the hands of the accused, and the defense contending that death resulted from natural causes. We
 
 *557
 
 •are further informed of this by the State’s brief, from which we quote: “As the entire record will show, the cause of death was an issue throughout and was actually the mainstay of the defense. That is that the deceased died of natural causes.”
 

 Under the issues as thus presented, the sole question for our consideration is whether the trial judge incorrectly sustained the objection on the ground that the witness was not qualified to answer the question, to the prejudice of the accused.
 

 Article 464 of the Code of Criminal Procedure provides that in • all questions involving knowledge obtained by means of a special training or experience the opinions of persons having such special knowledge are admissible as expert testimony. Under Article 466 the test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and, before any witness can give evidence as an expert, his competency so to testify must have been established to the satisfaction of the court.
 

 Under the authority of the latter article and the jurisprudence'of this court, it is well settled that it is within the province of the trial judge to decide whether witnesses offered as experts are entitled to be heard in that capacity, and his ruling will not be disturbed where nothing appears to show error. Marr, Criminal Jurisprudence of Louisiana (2d ed.), sec. 581, p. 901. See State v. Smith, 106 La. 33, 30 So. 248; State v. Mathis, 106 La. 263, 30 So. 834.
 

 In the instant case, however, we are of the opinion that the trial judge has abused his discretion, and that his refusal to permit the witness to answer the question propounded was highly prejudicial to the rights of the accused and constituted reversible error.
 

 The rule- applicable here is stated in 2 Wigmore on Evidence (3d ed.), sec. 569, p. 665, as follows:
 

 “The chief question that here occurs is whether a
 
 general practitioner
 
 may testify on matters of a particular department of the science wherein specialists may presumably be had. Here the Courts seem not to have taken a sufficiently firm stand against the narrow objections frequently raised. It is not that the rulings themselves are illiberal, but that narrow doctrines are not repudiated with sufficient positiveness. The liberal doctrine should be insisted on that the law does not require the best possible kind of a witness, but only persons of such qualifications as the community daily and reasonably relies upon in seeking medical advice.
 
 Specialists
 
 are in most communities few and far between; the ordinary medical practitioner should be received on all matters as to which a regular medical training necessarily involves some general knowledge.”
 

 In 2 Wharton’s Criminal Evidence (11th ed.), sec. 960, pp. 1694-1695, the rule
 
 *559
 
 is given thus: “In the case of medical witnesses offered as experts, the school of medicine to which they belong is immaterial. The test is whether the witness is familiar with such laws of the medical profession as bear upon the issue. Physicians,
 
 when in general practice,
 
 are admissible to state the nature and effect of a disease, the conditions of gestation, the effect of particular poisons on the human system or on animals, the effects of a particular treatment, and the likelihood that death could be produced by a particular disease,
 
 even though they have not made such topics a specialty.
 
 * * * ” (All italics •ours.)
 

 See also Drucker v. Philadelphia Dairy Products Co., Inc., 5 W.W.Harr. 437, 5 Del. 437, 166 A. 796; Crawford et al. v. American Stores Co., 136 A. 715, 5 N.J. Misc. 413; Pridgen v. Gibson, 194 N.C. 289, 139 S.E. 443, 54 A.L.R. 855; Hill v. Carolina Power & Light Co. et al., 204 S. C. 83, 28 S.E.2d 545.
 

 Rogers on Expert Testimony says as to this:
 

 “Neither is it necessary that the medical witness should have made a specialty of the particular disease which is the subject of inquiry. A general practitioner is, ordinarily, a competent witness.
 

 “It is a well known fact that at the present day various classes of diseases have been made specialties, and that many practioners devote themselves exclusively to certain diseases of the eye, or ear, or lungs and throat, or heart, or nervous diseases, or diseases of the brain. But the law does not require the medical witness to
 
 have made a specialty
 
 of any one of these subjects to qualify him to testify in relation to the same. * * * ” (2d ed.), sec. 42, at p. 101.
 

 “* * * Before testifying as an expert the witness must be shown to be qualified by experience or requisite study, to form an opinion on the subject under inquiry. Nevertheless it is not essential that one giving opinion evidence qualify as a specialist in the particular subject. * * * ” (3d ed.), sec. 225, at p. 514.
 

 It will be observed that the only objection to the question made by counsel for the State and sustained by the court was that the witness was not a heart specialist. The fact that the witness was not a heart specialist might affect the weight to be given to his testimony, but it certainly did not affect its admissibility.
 

 In brief filed in this court, counsel for the State now take the position that the question propounded was not a proper hypothetical one and that the proper predicate had not been laid for asking such question, and, further, that, even if the trial judge erred in sustaining the objection, the accused was not prejudiced because a reading of the entire testimony of the witness will disclose that the witness subsequently answered, in substance, the question propounded.
 

 
 *561
 
 In answer to the first contention, counsel overlook the fact that no such objection was made, and that the testimony was excluded only for the reason that the witness was not a heart specialist. In answer to the second contention, a reading of the testimony of the witness discloses that an answer to the question in its entirety was never given in his testimony.
 

 Although we have concluded that the accused is entitled to a new trial, we find it necessary to discuss one other bill of exception, which was reserved in connection with the admission of a statement or confession given by the accused, since it is likely that the same objections and arguments will be made on this point on a subsequent trial.
 

 In his per curiam the trial judge informs us that the State proved beyond a shadow of doubt that the statement was made by the defendant freely, voluntarily, and without promises, inducements, or offers of any reward. A reading of all the evidence adduced prior to the introduction in evidence of the statement convinces us that the ruling of the trial judge was correct, and that it was affirmatively shown that the statement was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements, or promises.
 

 For the reasons assigned, the conviction and sentence are set aside, and the case is ordered remanded for a new trial.