273 So.2d 534 (1973)
Winifred PELLEGRIN, wife of and Marion JENNINGS
v.
ALLSTATE INSURANCE COMPANY et al.
No. 9150.
Court of Appeal of Louisiana, First Circuit.
February 1, 1973.
*535 Frans J. LaBranche, Jr., Connolly & LaBranche, New Orleans, for appellant.
John J. Hainkel, Jr., Porteous, Toledano, Hainkel & Johnson, New Orleans, for Allstate Ins. Co.
Ernest Kelly, Houma, for Lee Ellender.
Before LOTTINGER, ELLIS and CRAIN, JJ.
LOTTINGER, Judge.
This suit was instituted against Darrel J. Ellender, Lee P. Ellender, and Allstate Insurance Company by appellants, Winifred Pellegrin wife of and Marion Jennings, for damages relating to the stillborn birth of their infant child allegedly caused by an automobile accident which occurred on June 15, 1968. The Lower Court rendered judgment in favor of defendant-appellees dismissing the claim of plaintiff at their costs. Plaintiffs have filed this appeal.
On June 15, 1968, at approximately 4:20 P.M., a vehicle operated by Darrel J. Ellender was proceeding South on Louisiana Highway 57, passing another vehicle. There were some vehicles proceeding North and Ellender attempted to pull back into his lane of traffic, left the highway, crossed the shoulder of the road and struck a utility pole. The pole was in a cane field on the western side of the highway. Allstate Insurance Co. insured Ellender.
The plaintiffs-appellants herein, Mr. and Mrs. Jennings, allege that one of the wires on the pole struck the windshield of the vehicle being driven by Mrs. Jennings, shocking her right hand and resulting in the still birth of her child some eight days after the alleged incident.
The Trial Judge gave no Reasons for Judgment in finding in favor of the defendants. Therefore, we can only speculate on the reason or reasons he felt the plaintiffs failed to prove their case.
The first question the Trial Court would have to decide is whether Mrs. Jennings actually received a shock as a result of Darrel J. Ellender's negligent act. If the Lower Court dismissed plaintiffs' suit because it found that Mrs. Jennings did not receive the shock in question, we would not find the Trial Judge manifestly erroneous because there was testimony from two witnesses in the vehicle which was being passed by Ellender that there was no vehicle such as that being driven by Mrs. Jennings approaching the accident at the time it occurred. This in itself would be sufficient to find that Mrs. Jennings did not receive a shock as alleged, but we would be inclined to believe otherwise. Without reciting all of the testimony relating to this point, we will assume for the sake of argument that Mr. Ellender was negligent in losing control of the vehicle he was driving causing it to hit the pole, causing the wire on the pole to snap, causing the wire to hit Mrs. Jennings' vehicle, and causing her to receive a shock.
The more pertinent question would be whether the shock Mrs. Jennings received caused the still birth of her child. Plaintiffs offered the testimony of three experts concerning this point; namely, Dr. Saul Landry, Terrebonne Parish Coroner, who the parties stipulated to be an expert in the field of the general practice of medicine; Dr. Joel Comeaux, who the parties stipulated to be an expert in the field of obstetrics and gynecology; and Dr. Frederick D. Peppler, Ph.D. in anatomy, who was qualified as an expert anatomist. Each admitted that he had no personal experience as to the effect of electrical shock on an unborn infant.
In connection with this question plaintiffs believe that the Trial Judge erred in refusing to allow Drs. Comeaux and Peppler to testify as to the effect of shock to *536 a mother on her unborn child. Did the Trial Judge act improperly by limiting expert witnesses in the questions he allowed them to answer? We think not, and on this point we quote from Carvell v. Winn, La.App., 154 So.2d 788, 791 (1963) (writ refused).
"As previously stated herein, whether or not a witness meets the qualifications to testify as an expert is largely within the discretion of the trial judge. In our opinion, it is also largely within the discretion of the trial judge to determine the competency of expert witnesses to testify to specialized areas on inquiry not necessarily within his general competency to give an opinion as an expert, or at least not shown to be so by the facts of the record. That is, the trial court is not under a mandatory duty to permit an expert witness to testify to any matter upon which the expert himself says he is qualified to give an expert opinion; the court must have some discretion to limit the witness's testimony as an expert to the actual field of his expertise and as applicable to the facts of the particular litigation, then before it (subject of course to a showing that the court abused its discretion in this regard, State v. Carter, 217 La. 547, 46 So.2d 897.)
"Thus referring to the ability of a witness to testify as an expert based upon his `experiential capacity', Dean Wigmore noted that `The capacity is in every case a relative one, i.e., relative to the topic about which the person is asked to make the statement * * *. His fitness, then, is a fitness to answer on that point. He may be fitted to answer about countless other matters, but that does not justify accepting his views in the matter in hand.' 2 Wigmore on Evidence (3rd ed., 1940), Section 555(1) at p. 634. `In most jurisdictions it is repeatedly declared that the decision upon the experiential qualifications of witnesses should be left to the determination of the trial court', referring to `the fact of the possession of the required qualification by a particular witness.' Ibid, Section 561, p. 641. Cf. LSA-R.S. 15:466; State v. Mills, 229 La. 758, 86 So.2d 895 (syllabus 8)."
Also on this point, plaintiffs' counsel argues that the Lower Court improperly excluded Dr. Peppler's reference to and explanation of a German Medical Article entitled "Intrauterine Death of the Fetus in a Mother Shocked by Electric Current." We agree with the Trial Judge in ruling that the article itself was inadmissable as hearsay since its author was not present to be cross examined. The Trial Judge had already decided that he did not consider Dr. Peppler qualified to answer questions regarding the effect of electrical shock on a fetus because he had no personal experience on the subject. Certainly his reference to and explanation of the article would have been on this same subject which the Lower Court, in its discretion, had decided the witness unqualified to discuss.
As disastrous to plaintiffs' case as the Trial Judge's rulings may have been, we do not find an abuse of his discretion.
Now, did the plaintiffs prove the necessary causal connection between the electrical shock and the death of the unborn child.
The evidence on this point is that Dr. Comeaux had seen Mrs. Jennings on June 14, 1968, the day before the accident and heard normal fetal heart tones. Mrs. Jennings returned for her regular appointment on June 21 at which time Dr. Gremillion, who was Dr. Comeaux's partner, heard no heart tones. Mrs. Jennings' due date was June 26, 1968 and on June 23, the child was still born. Mrs. Jennings admits that she thinks she felt a movement of her baby about an hour after the accident and at the trial stated that she felt no other movement. The defendants made much of a prior statement she signed which we quote:
"The baby was very active the day following or that Saturday but it decreased *537 its activity from the Sunday on. On the Tuesday I ceased to feel any activity and on the Friday the doctor didn't give us much hope."
Mrs. Jennings explained that an insurance adjuster wrote this statement, and when she protested the above portion of it, he said that it did not matter.
Mrs. Jennings sought no medical treatment on the day of the accident, but her husband said he telephoned Dr. Comeaux concerning what had occurred. Dr. Comeaux had no record of this call and did not remember it.
Dr. Landry, who did an autopsy, testified that the baby could have been dead a few days, or it may have been dead a week prior to delivery. He also testified that the cause of death was unknown to him.
Dr. Comeaux's testimony on cross examination was:
"A There was no definite evidence of any definite cause of death.
Q Doctor, also, the fetus when you saw it, as I understood your opinion, it could have died at any time between the 14th and the 21st, is that right?
A From the evidence that we have, that is correct. That is what I said.
Q You couldn't tell whether it had been dead exactly two days or five days or seven days?
A No sir. In one place, I have about four days, and as I testified a little earlier, about a week."
For the law as to what is required of plaintiffs in proving their case we quote from Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276, 278 (1964).
"The law of Louisiana requires plaintiffs to make out their case by a fair preponderance of the evidence. Iennusa v. Rosato, 207 La. 999, 22 So.2d 467 (1945); Perez v. Meraux, 201 La. 498, 9 So.2d 662 (1942). By a preponderance of evidence is meant, simply, evidence which is of greater weight, or more convincing, than that which is offered in opposition to it. Coltharp v. Hearin Tank Lines, Inc., 239 La. 445, 118 So.2d 881 (1960); Edwards v. Shreveport Creosoting, Co., Inc., 207 La. 699, 21 So.2d 878 (1945); 32 C.J.S. Evidence § 1021. It would appear unnecessary to mention that a fact may be established by circumstantial as well as by direct and positive proof. Lemann Co., Ltd., v. Texas & Pacific Railway, 128 La. 1089, 55 So. 684 (1911); Tuten v. Shell Oil Co., La.App., 26 So.2d 757 (1946) 4 La.L.Rev. 70 (1941); cf. Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963); Perkins v. Texas and New Orleans Railroad Company, 243 La. 829, 147 So.2d 646 (1962).
"In the trial of civil cases, therefore, the concern is not for proof beyond a reasonable doubt but, rather, the requirement of proof may be satisfied with a preponderance of probabilities reasonably to be inferred from physical facts clearly established. Pohl v. American Bridge Division, U.S. Steel Corp., La.App., 109 So.2d 823 (1959).
"It should be remembered, too, that where a trial court has made a finding of fact its judgment will not be upset on appeal unless deemed manifestly erroneous by the appellate court. This is a venerable rule of law in Louisiana, cf. Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963)."
With the above facts and law in mind, we do not feel the Lower Court manifestly erroneous if it dismissed plaintiffs' suit because it found that the plaintiffs failed to prove that the shock to Mrs. Jennings, if there was a shock, caused the still birth of her child. Both the coroner who did the autopsy and the expert in obstetrics and gynecology said that they did not know what caused the still birth of the Jennings child.
*538 As previously stated, the Trial Judge gave no Reasons for Judgment. However, we have set forth the questions which had to be answered by the Lower Court in arriving at its decision.
1. Did Mrs. Jennings receive an electrical shock as the result of a negligent act of Ellender?
2. Did an electrical shock cause the still birth of the Jennings child?
In summary, we are inclined to believe that the Lower Court could have found that Mrs. Jennings did not receive a shock as a result of the negligence of Mr. Ellender as well as that, if there was a shock, same was not the cause of the still birth of her child.
For the reasons hereinabove assigned, the judgment of the Lower Court will be affirmed, all costs of this appeal to be paid by plaintiffs.
Judgment affirmed.