476 So.2d 825 (1985)
STATE of Louisiana
v.
Darrell MITCHELL.
No. 85-KA-169.
Court of Appeal of Louisiana, Fifth Circuit.
September 16, 1985.
*826 Arthur L. Harris, Sr., New Orleans, for defendant-appellant.
John L. Peytavin, Asst. Dist. Atty., Lutcher, for plaintiff-appellee.
Before BOUTALL, KLIEBERT and GRISBAUM, JJ.
GRISBAUM, Judge.
This is an appeal from a conviction of three counts of negligent homicide (Louisiana Revised Statute 14:32). We affirm.
The following issues are presented:
(1) whether the trial court erred in admitting a police officer's testimony relative *827 to (a) the rate of speed of the defendant's car (at the time of the accident), (b) the safety of the defendant's speed, and (c) whether the defendant was intoxicated (at the time of the accident);
(2) whether the trial court erred in admitting the testimony of a general practitioner relative to (a) the effects of alcohol on the body, (b) intoxication (at the time of the accident), and (c) the effects alcohol has on one's driving ability.
On November 21, 1982, the defendant was working at the Oasis Lounge in Paincourtville, Louisiana, in his capacity as a disc jockey. He worked from 9 o'clock p.m. until 3:30 a.m., and during this time admitted that he consumed from two to four 10-ounce cans of beer. At approximately 3:30 a.m., after disassembling his disco equipment and placing it in the trunk of his car, the defendant left the bar. He drove from the Oasis Lounge on Highway 70 across the Sunshine Bridge and then turned and drove eastbound on Louisiana Highway 3125. At the same time, Calogero C. Portera was driving his truck with passengers, Lee Royal P. Martin and Paul A. Jolivette, westbound on Louisiana Highway 3125. Just past the intersection of Louisiana Highway 3125 and Admiral's Landing Road, the two vehicles collided. Portera and Martin died at the crash site, and Paul Jolivette died on February 3, 1983, from internal brain injuries as a result of the collision. The defendant was taken to a local hospital where he was interviewed at 8:35 a.m., approximately 3 hours and 15 minutes after the accident. The defendant was found guilty of three counts of negligent homicide and was sentenced to five years at hard labor.
In addressing the initial issue, the record shows that State Trooper Jones, who investigated the accident scene (but who did not witness the occurrence of the accident), was qualified as an expert in accident investigation. The record reflects the officer had completed a 12-week traffic management course at Louisiana State University and had been trained to conduct detailed and in-depth evaluations of evidence collected for an accident report, which included determining the speed of vehicles by the observation and measurement of skid marks, swerve marks, scuff marks, and tire impressions on different kinds of pavement. Additionally, he had completed courses in engineering at LSU. He, however, frankly admitted that he had never before testified in the area of accident reconstruction and that this was not an area of his expertise.
When the trooper was asked to make a determination of the speed of the defendant's vehicle at the moment of impact, which was objected to by defense counsel, the court allowed Trooper Jones' answer but stated, "Well, the court feels that this witness, if he can, can answer the question." The court further said:
However, the court will rule that this is not necessarily within his field of his expertise, and, of course, that being the case, the court will refer the objection to the weight of the testimony and advise the jury that the answer given by the witness, if, in fact, he can answer the question is in the nature of his opinion as a state trooper, as an investigator of accidents and not necessarily as an expert.
The officer then testified that he estimated the speed of the defendant's vehicle to be approximately 55 miles per hour and the speed of the plaintiff's truck to be approximately 45 miles per hour. The officer further testified to the procedure underlying the basis for his determination of these speeds, which determination was based primarily upon three factors: (1) the length of skid marks of the truck; (2) the fact that when the collision occurred the car had crossed over into the truck's lane of travel; and (3) the fact that the car had continued forward, pushing the truck backwards.
Our jurisprudence in State v. Rogers, 324 So.2d 358 (La.1976) has stated that "determination of the competency of an expert witness is a question of fact, and the trial court's ruling should not be disturbed in the absence of manifest error."
*828 We find Trooper Jones was clearly qualified as an expert in accident investigation and the court, before allowing his answer, correctly analyzed the officer's area of expertise and so admonished the jury. Therefore, we find no manifest error. Accordingly, this assignment lacks merit.
We now turn to discuss whether the testimony of the trooper regarding the safety of the defendant's rate of speed was properly admitted. The record shows the trial judge stated prior to the officer's answering the question that, "I think he's qualified to answer it as to the conditions existing when he arrived but not anytime before..." Thereafter, the witness was again asked by the prosecution to give his opinion with regard to a safe rate of speed under the known weather conditions existing at the time of the accident. The witness answered:
With the conditions I knew that existed at the time, which was darkness at 5:20 in the morning, there was no doubt about that it was dark and it was foggy and there's no doubt about that either, that, no, 50-5 was not a safe speed to be traveling on 3125.
We find there is no doubt this witness is and has been properly qualified as an expert in accident investigation, which includes collecting accident information and drafting police reports from this information. The record shows he personally observed the foggy weather conditions, one hour after the accident, which necessitated a slower driving speed. Additionally, the defendant himself admitted the foggy weather conditions which existed at the time of the collision and which necessitated the slower driving speed. Thus, one of the premises of the witness' opiniondarknesswas self-evident; the otherfogginesswas conceded by the defendant. Having been qualified as an expert, Officer Jones is manifestly competent to base an opinion on such elementary facts. Accordingly, we find the trial court did not err; therefore, this assignment lacks merit.
We now turn to determine whether the officer's testimony relative to intoxication at the time of the accident was properly admitted. We note the officer testified that, upon speaking with the defendant in the hospital, he detected alcohol on the defendant's person and mouth area and that the defendant admitted he had been drinking. Additionally, Officer Jones testified the defendant admitted he could possibly have fallen asleep at the wheel just prior to the accident. Moreover, the officer testified the defendant had been driving on the wrong side of the road at the time of the collision and that alcoholic containers had been found in his car. Finally, Officer Jones stated he was not an expert in whether a person was intoxicated at the time of the accident and that he could only give his opinion after collecting accident information, which is part of his job.
Since our jurisprudence states that intoxication (with its attendant behavioral manifestations) is an observable condition about which a witness may testify, we find this testimony was properly admitted. State v. Landry, 463 So.2d 761 (La. App. 5th Cir.1985). Moreover, the defendant did not object to this testimony at the time of the trial; therefore, in accordance with article 841 of the Louisiana Code of Criminal Procedure, he cannot avail himself of an objection for the first time on appeal.
We now turn to determine whether the trial court erred in its ruling regarding the following aspects of Dr. Poche's testimony.
Dr. Carl Poche, a general practitioner, testified about the effects of alcohol on the body as follows:
Q. Taken even in moderate amounts it (alcohol) does have effects on the body?
A. Yes, it does.
Q. What effect would you say that having maybe three beers would have on a 160 pound man taken in a two hour period, if you know?
A. It would vary on the previous drinking habit, I would believe. A person drinking that much for the first time would probably be more effected [sic] by it, but alcohol is a depressant, it depresses the brain and central nervous system *829 and a person who is not accustomed to drinking it would be more marked, and it does cause a depression of the central nervous system.
Q. Would it have a greater effect on that same man to drink say, six beers in a two hour period.
A. Yes, it would.
Q. What greater effect would it have?
A. Well, the effects of the alcohol are proportionate to the amount consumed and amount absorbed into the body. So a larger amount consumed would have more effect on the body.
Defense counsel objected to the question on the ground that the doctor's answer was not relevant in that it related information of common knowledge and on the additional ground that Dr. Poche had qualified as a general practitioner and not as a specialist in the rate of alcohol metabolism.
Defense counsel also objected to the following testimony:
Q. Would you as an expert conclude that a person with a .09 percent reading at the present time and who had consumed no alcohol for a three hour period have had a higher reading than .09 percent three hours earlier?
. . . . . .
A. I think its just common sense. Also, as he stated before it should be common knowledge that the body is gradually destroying it. Three hours earlier he should have had more in the blood stream than at the present time.
Defense counsel objected to this question and answer on the ground that the doctor was not qualified as an expert in alcohol consumption rates and effects in that he admitted to little experience in this area.
Finally, defense counsel objected to the following:
Q. Doctor, how could these characteristics (of alcohol consumption) affect a person's driving ability?
A. Well certainly it would vary with the amount of alcohol present in the person's bloodstream, but certainly reaction times would be slow, he would not react to a given circumstance where he would need to apply brakes rapidly or notice something and react to avoid it suddenly, a person could be sleepy and drowsy and not have control of the vehicle from not being aware of what he's doing. In other words, falling asleep and not being able to control a vehicle at all.
Defense counsel objected arguing that any testimony regarding the effects of alcohol on driving ability was common knowledge and that the prejudicial effect of this testimony outweighs the probative value. The court overruled the objection allowing the testimony into the record and stating that the doctor's degree of expertise, or lack thereof, was known to the jury and would go to the weight of the evidence.
In summary, the trial court allowed the doctor to testify that (1) even moderate amounts of alcohol affect the body and that the more alcohol consumed, the greater the effect on the body, (2) a blood alcohol reading taken three hours subsequent to the accident will be lower than it would have been if taken at the time of the accident, and (3) alcohol causes a driver's reaction to an emergency to be slower.
As indicated above, the competency of an expert witness is a question of fact within the sound discretion of the trial court, and its ruling will not be disturbed unless clearly wrong. State v. Sherer, 411 So.2d 1050, 1053 (La.1982); State v. Carter, 217 La. 547, 46 So.2d 897 (1950); State v. Dufrene, 461 So.2d 1263 (La.App. 1st Cir.1984); State v. Becnel, 441 So.2d 339 (La.App. 5th Cir.1983). Louisiana Revised Statute 15:464 provides that in all questions involving knowledge obtained by means of a special training or experience the opinions for persons having such knowledge are admissible as expert testimony. Pursuant to Louisiana Revised Statute 15:466, the test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion; before any witness can give evidence as an expert, his competency must have been established to the satisfaction of the court.
*830 At the time of trial, Dr. Poche had been a practicing physician for 24 years and the St. James Parish Coroner since 1976. As coroner, he performs duties in alcohol-related commitments. In addition, he had taken a pharmacology course studying the effects of drugs, their uses, and side-effects. In light of this education and practical experience, it would not appear that the trial judge abused his discretion in ruling the witness qualified as an expert in general medicine without an area of specialty, and in further ruling admissible his testimony with regard to alcohol consumption, the rate at which it is metabolized, and its possible effects on driving.
Furthermore, the prosecution called Paul Cobb, who was accepted without objection as an expert in forensic science and blood analysis, and particularly as a blood alcohol specialist analyst. Cobb testified that he had performed a blood alcohol determination on the defendant, with a reading of .0921 percent, on November 22, 1982, at 8:40 a.m., which was about three hours after the collision. It was his opinion that if taken three hours earlier, the defendant's blood alcohol would have registered more than .10 percent. It was the expert's opinion that the defendant was under the influence of alcohol at the time of the collision, and he testified that generally when there is a blood alcohol concentration of at least .10 percent, a person's driving ability is impaired. Cobb would not testify, however, as to whether the defendant's driving ability was impaired in this case. Nevertheless, in view of Cobb's testimony supporting Dr. Poche's testimony with regard to alcohol consumption, its rate of metabolism in the body, and its effect on driving ability, it becomes apparent that the admission of the objected-to portions of Dr. Poche's testimony at trial presents no reversible error.
Finally, the record shows that even though the defendant was convicted of three separate counts of negligent homicide, the trial judge only imposed a single sentence of five years at hard labor for the offenses. Technically, this constitutes a defective sentence, which is error patent as prescribed by Louisiana Code of Criminal Procedure article 920. However, after a careful reading of the record, it is apparent the trial judge intended to impose three concurrent five-year sentences. Thus, as this court has stated in State v. Smith, 461 So.2d 434 (La.App. 5th Cir.1984), only harmless error is presented since the sentence infringes none of the defendant's substantive rights.
For the reasons assigned, the conviction and sentence are affirmed.
AFFIRMED.