BOWES, Judge.
These cases arose from a single tragic automobile accident in which Crystal Roper and Rod Cran, two minor teenagers, were killed and Mrs. Ivy Hodgin injured. Crystal and Rod were the only two occupants of the vehicle (owned by defendant George Templet) which veered into oncoming traffic on U.S. Highway 90 and collided with the Hodgin automobile. The big question in this litigation is which teenager was driving at the time. Crystal’s parents filed suit against Cran’s mother, Mrs. Johanna Gelsomino, and his stepfather, Anthony Gelsomino, who reconvened against the Ropers. Mrs. Hodgin sued Mrs. Gelsomino and the Ropers. All plaintiffs filed suit against Templet and his insurer.
State Farm Insurance Company was made a defendant, both as liability insurer of Cran and Mrs. Gelsomino and as her uninsured/underinsured motorist carrier, and was represented by separate counsel in each capacity. The lawsuits were consolidated for hearing and, after trial on the merits, the district court rendered judgment finding that Crystal Roper was the driver of the automobile at the time of the accident, thereby defeating the Ropers’ action against Mrs. Gelsomino. Both the Ropers and Mrs. Hodgin filed motions for a new trial, one of which was denied as to Mrs. Hodgin. Nevertheless, all plaintiffs have appealed. We affirm.
Before a discussion of the substantive claims of the appellants, we are obliged to resolve a threshold procedural issue: Is the appeal filed by the Ropers’ premature?
Following judgment after the trial, both the Ropers and Ivy Hodgin timely moved, separately, for a new trial. The motions were apparently heard together, with counsel for all parties present. However, the judgment denying a new trial stated “that the law and evidence are in favor of respondent and against movant Ivy Hod-gin_” No specific mention of the Ropers as movants or plaintiffs was made. No other judgment on a new trial appears in the record.
The Fourth Circuit has held that where a motion for a new trial was timely filed and the motion has not been acted upon, the judgment appealed from is not final. Halverson v. Eagle Trucking Co., 384 So.2d 999 (La.App. 4 Cir.1980). See also Hanson v. Hanson, 464 So.2d 1096 (La.App. 3 Cir. 1985). However, both those cases (dismissing the appeals as premature) involved a motion for an appeal filed by one party while the motion for a new trial, filed by the other party, was still pending. In a situation such as we have here, in which the original appellant is the identical party who moved for a new trial, the Fourth Circuit, in another case, held that the perfection of the appeal divested the trial court of jurisdiction and constituted an abandonment of the application for a new trial. Vicknair v. T.L. James Co., Inc., 375 So.2d 960 (La.App. 4 Cir.1979). See also Kemper v. Doyal, 212 So.2d 166 (La. App. 3 Cir.1968).
We find the latter reasoning persuasive in this case where the facts are identical. Since Mrs. Hodgin’s motion for a new trial was acted upon, and the Ropers appealed before their motion was ruled *870 upon, we find that the Ropers, by filing an appeal, have abandoned their motion for a new trial. Consequently, we hold that their appeal is properly before us at this time.
Turning to the substantive issues, we note the posture of the case by the time of trial. A written stipulation signed by all parties read as follows:
It is stipulated by all parties that the primary vehicle involved was owned by GEORGE TEMPLET and insured by SOUTHERN SECURITY INSURANCE COMPANY.
The coverage under that policy was 5/10 liability.
The TEMPLET vehicle was occupied at the time of the accident by CRYSTAL ROPER and ROD CRAN.
JOHANNA GELSOMINO was the mother of ROD CRAN and was insured by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY with liability limits of 50/100 and uninsured motorist limits of 10/20.
That as a result of the accident subject of this lawsuit both CRYSTAL ROPER and ROD CRAN were killed and IYY HODGIN, the occupant of an involved vehicle, was injured.
That an issue exists as to the driver of the TEMPLET automobile at the time of the accident and this is the only issue to be decided by this Court.
Counsel have agreed that if CRYSTAL ROPER is found to have been driving the TEMPLET vehicle then the case on her behalf shall be dismissed; the survivors of ROD CRAN shall be paid $5,000.00 by SOUTHERN SECURITY INSURANCE COMPANY and $10,000.00 by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY. IVY HODGIN shall be paid $5,000.00 by SOUTHERN SECURITY INSURANCE COMPANY.
If ROD CRAN is found to be the driver then the suit on his behalf shall be dismissed; the survivors of CRYSTAL ROPER shall be paid $5,000.00 by SOUTHERN SECURITY INSURANCE COMPANY and $50,000.00 by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY; IVY HODGIN shall be paid $5,000.00 by SOUTHERN SECURITY INSURANCE COMPANY and $50,000.00 by STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY.
It has also been agreed that all Judgments will be against insurance companies only, and shall include court costs, and judicial interest.
The sole issue at trial, then, was a determination as to the identity of the driver. Following a full trial on the merits, the court found that the evidence supported a conclusion that Crystal Roper was driving the car at the time of the accident.
Appellant’s first assignment of error is that the judge erred in refusing to qualify the State Trooper who investigated the accident as an expert in the field of accident investigation; consequently, the officer was not permitted to render an “expert opinion” as to which of the deceased teenagers drove the automobile. Plaintiffs also urge that the court’s finding was contrary to the weight of the evidence, partially because the trial judge did not examine the post-accident photographs admitted into evidence by the plaintiffs.
This Court considered the question of expert opinion in Succession of Armshaw v. Succession of Marbury, 428 So.2d 1180 (La.App. 5 Cir.1983):
The general rule as to qualification of experts and the allowance of their expert opinion in evidence was set out by Judge (subsequently Justice) Tate in Carvell v. Winn, 154 So.2d 788 (La.App. 3rd Cir. 1963) at page 791, writ refused, and quoted in Jennings v. Allstate Insurance Company, 273 So.2d 534, (La.App. 1st Cir.1973) at page 536, as follows:
[ ...] whether or not a witness meets the qualifications to testify as an expert is largely within the discretion of the trial judge. In our opinion, it is also largely within the discretion of the trial judge to determine the competency of expert witnesses to testify to specialized areas on inquiry not necessarily within his general competency to give an opinion as an expert, or at least not shown to *871 be so by the facts of the record. That is, the trial court is not under a mandatory duty to permit an expert witness to testify to any matter upon which the expert himself says he is qualified to give an expert opinion; the court must have some discretion to limit the witness’s testimony as an expert to the actual field of his expertise and as applicable to the facts of the particular litigation, then before it (subject of course to a showing that the court abused its discretion in this regard, State v. Carter, 217 La. 547, 46 So.2d 897.)
“Thus referring to the ability of a witness to testify as an expert based upon his ‘experiential capacity’, Dean Wigmore noted that ‘The capacity is in every case a relative one, i.e., relative to the topic about which the person is asked to make the statement * * *.
In Hunnicutt v. Kent, 434 So.2d 91 (La.App. 5 Cir.1982), we stated that the purpose of an expert witness is to give an opinion based upon his professional qualifications and experience. The trial court may properly exclude the testimony of any witness as an expert where that person is unable to demonstrate sufficient training or experience in the field for which he has sought to qualify as an expert. The trial court’s ruling on the competency of an offered expert must not be disturbed unless the error is clear and involves a misconception of law. Hunnicutt, supra.
In the instant case, Officer Vittitoe was a state police officer for seven years (at the time of trial) with only three weeks of academy training in accident investigation reconstruction. He had never been previously qualified as an expert in any court, although he estimated that he had investigated more than one thousand automobile accidents, approximately twenty-five of which involved fatalities. Officer Vittitoe stated that he was not an accident reconstruction expert, but that accident investigation involved gathering facts at the scene. In every accident report, he designates the driver and passenger, if any, based upon physical evidence and observation.
Experience alone is sometimes enough to qualify a witness as an expert. It is not always necessary to have formal training or education to qualify as an expert in a particular field. Aaron v. Bankers and Shippers Ins. Co., 475 So.2d 379 (La.App. 1 Cir.1985). The trial judge declined to qualify the officer as an expert in either accident reconstruction or investigation, and, in the latter case, may well have erred. However, we find that such error was not prejudicial to the plaintiffs. Officer Vittitoe stated in his testimony that the male occupant was on the driver’s side, and his foot was stuck underneath the brake pedal. He described the position of the female occupant as being partially underneath the boy, and that her feet were on the passenger side. There was much other testimony from the officer, and all of it to the effect that, following the accident, Rod Cran’s body was in the driver’s seat with Crystal Roper’s in the passenger seat beside him. Clearly, had he been permitted to give an “expert opinion”, he would have testified that Cran was the driver. However, whether his testimony was received as an expert or a fact witness is immaterial because he was actually describing certain physical facts which he observed at the scene and his testimony was placed of record and heard by the judge. Had he been permitted an expert’s opinion, the trial judge would not have been bound by it any more than he was by the factual testimony.
Appellant’s second assignment of error is simply that the trial judge’s conclusion is contrary to the weight of the evidence presented.
The trier of fact is not bound by expert testimony, but evidence of an expert is received in the same manner as non-experts and is to be weighed by the trier of fact the same as any other evidence. Aaron, supra.
Accordingly, even if the trial judge had accepted the trooper as an expert in the field of accident investigation, he would no more be bound by his testimony than that of any other witness, nor would he *872 have been obliged to give the trooper’s testimony any more weight than he did.
Here, the only other witnesses who testified regarding the identity of the driver were Jerry Anspach and his wife, Paula Anspach. Both testified. Mrs. Anspach is a registered nurse who, with her husband, happened on the scene immediately following the accident and offered professional assistance. She stated that she was able to determine that the girl was already dead, but the boy was still breathing; .. In so doing, she noticed that the girl’s legs were behind the steering wheel, her upper body upright, her head back and twisted. The boy was on the right side of the car beside her. When the car door was finally opened, the girl fell partially to the pavement, and the boy just slumped to his left. Mr. Anspach’s testimony was to the same effect; i.e., that the girl’s body was behind the steering wheel in the driver’s seat, and the boy to her right.
The testimony of the Anspachs was based on observation of the same type of physical facts as was Officer Yittitoe’s, although to a contrary conclusion. Much of what the Anspachs stated directly contradicted the testimony of the trooper. The trial court, weighing the testimony, obviously believed that the Anspachs were the more credible witnesses. Hence, he concluded that the girl, and not the boy, was the driver of the automobile.
We find, as did the court, that the officer’s testimony was “ambiguous”. This Court finds inconsistencies in the trooper’s recollection[1] (likely caused by the numerous accidents Officer Vittitoe has investigated). The Anspachs are two independent and disinterested witnesses. Their testimony is clear, intelligent, and believable and entitled to the weight given it by the trial court. The determination made by the trier of fact is logical and well within his sound discretion. We certainly cannot say that he is clearly wrong and, accordingly, his findings will not be disturbed by us on appeal.
The photographs in question were taken after the removal of Rod Cran to the ambulance. Officer Vittitoe testified that the position of Crystal’s body did not change upon Rod’s removal. However, we have reviewed the photographs and do not find them to be dispositive of the question at issue, since the scene had, at that point, been altered. Furthermore, we do not find support in the record for the plaintiffs' conclusion that the trial court did not view the pictures. This assignment of error is without merit.
For the foregoing reasons, the judgment appealed from is affirmed. Costs of this appeal are assessed to appellants.
AFFIRMED.

. For example, Officer Vittitoe testified that Crystal’s head was supported by the (left) door and that when the door was opened, her head hit the ground. Yet he also stated that her body was underneath Cran's, who was sitting on top of her. And, further, he noticed the contusions were to the right side of Crystal’s head and body.