529 So.2d 497 (1988)
STATE of Louisiana
v.
Douglas R. GREMILLION.
No. CR87-1319.
Court of Appeal of Louisiana, Third Circuit.
June 22, 1988.
*498 Glenn Cortello, Alexandria, for defendant.
Michael W. Shannon, Dist. Atty., Alexandria, for plaintiff.
Before DOMENGEAUX, STOKER and KING, JJ.
STOKER, Judge.
On April 22, 1987 defendant, Douglas R. Gremillion, was charged by bill of indictment with manslaughter, a violation of *499 LSA-R.S. 14:31. On July 10, 1987 a jury of 12 convicted defendant of manslaughter and he was sentenced to 18 years at hard labor. Defendant appeals his conviction.

ASSIGNMENTS OF ERROR
Defendant assigns as errors the following:
1. The trial court erred in permitting Dr. Balthazar to testify as to the cause of death where the doctor was not an expert in the field of pathology.
2. The trial court erred in permitting the doctor to give an opinion as to the cause of pancreatitis, assuming that the victim did not have any prior abdominal problems, where the doctor was not qualified to give a medical opinion as to the cause of death and was not certified in the field of pathology.
3. The trial court erred in permitting the doctor to give his opinion as to the cause of pancreatitis.
4. The trial court erred in refusing to grant defendant's motion to strike since the question asked was misleading and assumed facts not yet in evidence and because the doctor was not qualified as an expert in the field of pathology or qualified to give an opinion as to the cause of death.
5. The trial court erred in ruling that Dr. Caillouet was qualified to testify as an expert witness when he was not qualified as such.
6. The trial court erred in denying the defendant the right to a medical expert to testify on his own behalf where the defendant was declared indigent and unable to afford the costs and expenses necessary to hire his own expert witness.
7. The trial court erred in denying the defendant equal protection under the law and denying substantive due process of law, discriminating against defendant based on wealth and denying defendant the right to have an expert testify on his behalf.
8. The trial court erred in permitting Dr. Caillouet to testify as an expert witness and in permitting him to give an opinion as to the cause of pancreatitis and cause of death.
9. The trial court erred in permitting Dr. Caillouet to give an opinion as to the cause of traumatic pancreatitis.
10. The trial court erred in refusing to permit the defense to introduce into evidence the statement obtained from the victim, Robert Dupuy, while he was at the hospital on his deathbed that "three white males had attacked him."
11. The trial court erred in failing to permit the introduction into evidence of the description obtained by the police officer from the victim, prior to his death, when the same had already been admitted into evidence before an untimely objection by the State.
12. The trial court erred in failing to permit the defense to introduce into evidence the statement made by the victim, "that three white males attacked him," when same had already been admitted into evidence through the medical history given in the State's own case-in-chief by Dr. Balthazar, since the door had already been opened for the introduction of the statement by the State in its case-in-chief.
13. The trial court erred in failing to permit the defense to use the statement obtained by the police from the victim, for purposes of impeachment.
14. The trial court erred in failing to permit defense witness, William Swain, to testify that he was afraid of the victim.
15. The trial court erred in refusing to permit the defense to ask a witness whether or not the victim had threatened him.
16. The trial court erred in refusing to permit the defense to question the witness as to whether he brought his friends to the bar with him because Bobby had threatened him.
17. The trial court erred in overruling a defense objection to the jury charge regarding the aggressor doctrine.
18. The trial court erred in giving the instruction as to the cause of death.

*500 19. The trial court erred in giving the jury instruction on the law of principals since there were no codefendants or principals involved in this case.
20. The trial court erred in denying the defendant his constitutional right of confrontation by refusing to permit the defense to cross-examine the police officer regarding the description of the attackers given by the deceased.
21. The trial court erred in that the jury failed to give the defendant the benefit of every reasonable doubt arising out of the evidence or lack of evidence in the case.
22. The trial court erred in that the evidence in this case was insufficient to convict the defendant of the charge of manslaughter.

FACTS
During the early morning hours of February 7, 1987 the victim, Robert Dupuy, was drinking in the Chalet Lounge in Alexandria. Defendant was in the company of the victim's ex-wife, Susan Dupuy, that evening. The Dupuys had been divorced about five months and the victim's companion urged him to leave before any trouble started. The victim was on his way out of the bar when he decided to turn around and confront defendant at the bar.
Defendant talked with Robert for a few minutes and Robert was overheard threatening defendant. At that point defendant hit Robert on the side of the face with his fist and knocked him down. When the victim hit the floor, he laid there on his back. Defendant went over to where Robert lay and stomped him on the stomach and chest four or five times. Susan Dupuy also kicked Robert twice in his side.
Defendant was pulled off Robert by a few onlookers and the police arrived shortly thereafter. Defendant waited outside in order to continue the fight, but was persuaded by his friend not to and the victim, Robert, drove away from the club without incident.
Later that morning, Robert Dupuy checked himself into the Veterans Administration Hospital complaining of severe abdominal pain from being kicked in the stomach. He was diagnosed as having pancreatitis. After undergoing two surgeries, Dupuy died on February 25, 1987 from traumatic pancreatitis.
Defendant was subsequently charged with manslaughter and convicted by a jury. Defendant appeals the conviction.

NOS. 1, 2, 3, 4, 5, 9 and 8EXPERT TESTIMONY
The trial court did not err in ruling that Dr. Balthazar and Dr. Caillouet were qualified to testify (as expert witnesses in general surgery) on the cause of the victim's death and on pancreatitis. The trial court was satisfied with their qualifications. Both doctors actually treated the victim for pancreatitis. A trial judge is vested with wide discretion in determining the competence of an expert witness. Competence of an expert witness is a question of fact to be determined within the sound discretion of the trial judge; his rulings on the qualification of expert witnesses will not be disturbed in the absence of manifest error. State v. Trosclair, 443 So.2d 1098 (La.1983). The test of medical witnesses' competency to testify is whether they are familiar with such principles of the medical profession as bear on the issue, and the testimony of physicians in general practice as to the nature and effects of a disease, effects of a particular treatment and likelihood that death could be produced by a particular disease is admissible, though they have not made such topics specialities. The fact that the witness is not a specialist might affect the weight to be given his testimony, but it does not affect its admissibility. State v. Carter, 217 La. 547, 46 So.2d 897 (1950).
We see no manifest error in allowing these witnesses to testify as experts in general surgery. Furthermore, their testimony was corroborated by the testimony of Dr. McGarry, the pathology expert witness who conducted the autopsy on the victim.
Defendant also alleges the trial court erred in not granting a motion to strike Dr. Balthazar's testimony concerning the cause of pancreatitis in the victim, and in so *501 doing, assuming the victim did not have prior abdominal problems. Defendant urges that the question was misleading and assumed facts not yet in evidence. We find that a clearly hypothetical question was posed, rather than the introduction as fact of that which was not yet in evidence. There was no error in permitting the doctor to give his opinion as to a clearly hypothetical situation. See LSA-R.S. 15:464; State v. Carter, supra.

NOS. 6 and 7INDIGENT'S RIGHT TO EXPERT WITNESSES
In State v. Balfa, 506 So.2d 1369 (La. App. 3d Cir.), writ denied, 512 So.2d 436 (La.1987), this court addressed the issue of furnishing expert witnesses to an indigent defendant:
"Furnishing counsel to the indigent defendant is not enough if counsel cannot secure information on which to construct a defense. State v. Madison, 345 So.2d 485 (La.1977). The Supreme Court has recognized that the state should supply funds upon a showing by the defense that the indigent accused is unable to obtain existing evidence crucial to his defense. State v. Monroe, 397 So.2d 1258 (La.1981). Madison, supra. When the issue is considered on review the question becomes whether the denial of funds has substantially prejudiced the defendant at trial. State v. Prestridge, 399 So.2d 564 (La.1981).
In State v. Hodge, 457 So.2d 152 (La. App. 2nd Cir.1984), writ denied 459 So.2d 545 (La.1984), the defendant sought appellate review of the trial court's denial of his motion for the court to appoint an investigator, a pathologist and an expert in the fields of firearms identification to assist him in preparing his defense. The Second Circuit found that defendant failed to adequately show that the state's experts might be erroneous in their opinions or that another expert might necessarily be expected to disagree with their conclusions."
In the case before us, defendant has alleged prejudice because the only expert medical witnesses testified against defendant and because they were doctors.
No claims that their opinions may be erroneous or that another expert might necessarily be expected to disagree with their conclusions have been made. Moreover, it is significant that all three doctors agreed that the cause of death was traumatic pancreatitis and excluded the possibility of pancreatitis caused by alcoholism because of significant symptom differences. Furthermore, the fact that the State presented three medical expert witnesses and the defendant had none is irrelevant when taken in context. The three witnesses presented by the State were the victim's two treating physicians and the doctor who performed the autopsy. We find the defendant has not carried his burden of proof and these assignments lack merit.

NOS. 10, 11, 12, 13 and 20HEARSAY TESTIMONY
The victim's hospital records, which were read into evidence by the State, included the statement made by the victim to the police that "three white males attacked him." Dr. Balthazar read from the records in order to refresh his memory as to the victim's medical history and to establish the basis of his diagnosis of traumatic pancreatitis. The trial court did not permit defendant to use the statement, however, to set forth a defense that someone other than himself caused the injuries which resulted in Dupuy's death.
Hearsay evidence is an unsworn, out-of-court statement used to prove the truth of the matter asserted in the statement. The value of the evidence rests on the credibility of the out-of-court asserter for its value. An exception to the hearsay rule must provide some circumstantial probability of trustworthiness to take the place, as far as possible, of cross-examination. State v. Landry, 388 So.2d 699 (La.1980).
The admission into evidence of the victim's statement as part of the hospital record was not hearsay because it was introduced as part of the basis for Dr. Balthazar's expert diagnosis as to the type of injury sustained, not to prove the truth of the statement. See State v. Andrews, 369 So.2d 1049 (La.1979). However, the *502 defendant's use of the statement to establish a defense was correctly denied as hearsay, since it would be used to prove the truth of the matter asserted therein in establishing a defense. State v. Thompson, 331 So.2d 848 (La.1976); State v. Jacobs, 281 So.2d 713 (La.1973).
The victim's statement was also placed in a police report. Defendant contends the statement is admissible under the hearsay exceptions of excited utterance-res gestae, dying declaration or the business records exception. The victim's statement was made about ten hours after the fight. He drove himself to the hospital and completed the admissions process before making the statement. The statement, a narrative response to an inquiry, was the result of reflective thought rather than a spontaneous reaction to the immediate pressure of an occurrence. Moreover, the fact that the victim was in pain at the time he made the statement does not constitute a continuation of the chain of events which took place ten hours earlier. The involuntariness and spontaneity which are the indicia of truthfulness in this exception to the hearsay rule are absent in this case. See State v. Jacobs, supra. Moreover, an analogy to such cases as State v. Prestridge, 399 So.2d 564 (La.1981), and its progeny is inappropriate since they establish an exception to the timing of a spontaneous reaction only in cases of sexual offenses involving the original complaint of a young child. Therefore, the res gestae-excited utterance exception is inapplicable.
The dying declaration exception to the hearsay rule is also inapplicable. There is no evidence that the victim believed his death was imminent on the day he checked into the hospital and, in fact, he died 18 days after making the statement. Absent this important requirement, which is the circumstantial indication of truthfulness in this hearsay exception, the statement cannot be considered a dying declaration. See State v. Jacobs, supra.
The jurisprudentially established business records exception to the hearsay rule is inapplicable in this case. The statement contained in the record is hearsay. It is not offered to explain Deputy Bowden's actions, but rather to prove the truth of the matter it asserts. Therefore, it does not fall within the business records exception as it applies to police records. See State v. Edwards, 406 So.2d 1331 (La.1981).
Finally, defendant alleges his constitutional right of confrontation was denied when the trial court refused to permit him to cross-examine Deputy Bowden regarding the description of the attackers given by the victim. However, since Deputy Bowden was defendant's own witness, he did not have the right to cross-examine him and, absent a showing of hostility, he did not have the right to impeach him. State v. Nuccio, 454 So.2d 93 (La.1984).
Therefore, these assignments lack merit.

NOS. 14, 15 and 16CHARACTER EVIDENCE
Defendant contends the trial court erred in failing to permit defense witness, William Swain, to testify as to his fear of Dupuy, as to whether or not Dupuy had threatened him and as to whether Swain had brought his friends to the bar with him because Dupuy had threatened him. Swain had been at the Chalet Lounge with friends and Dupuy's ex-wife, Susan Dupuy, that night. Apparently, Dupuy and Swain discussed a vehicle which Dupuy had sold to Swain. When Dupuy was unable to deliver title on the vehicle, Swain returned the vehicle to Dupuy, but Dupuy never refunded Swain's $800.
LSA-R.S. 15:482 states, as to character evidence:
"§ 482. Restriction on use of evidence of threats or dangerous character of party injured
"In the absence of evidence of hostile demonstration or of overt act on the part of the person slain or injured, evidence of his dangerous character or of his threats against accused is not admissible."
The term "overt act," as used in connection with the plea of self-defense, means any act of the victim which manifests to the mind of a reasonable person a present intention on his part to kill or do *503 great bodily harm. State v. Edwards, 420 So.2d 663 (La.1982). No overt act has been alleged and defendant contends it is unnecessary since the testimony would pertain to motive rather than to bad character. Clearly, however, the evidence would demonstrate bad character and threats. The facts presented as to the vehicle transaction pertain to motive. The testimony as to bad character and threats was correctly excluded because it lacked a proper foundation of overt act or hostile demonstration.

NOS. 17, 18 and 19JURY INSTRUCTIONS
Defendant contends the trial court erred in overruling his objection to jury charges on the aggressor doctrine, the cause of death and the law of principals.
LSA-C.Cr.P. art. 802 mandates that a trial judge shall charge the jury as to all law applicable in the case. The charges objected to by defendant were special charges requested by the State. A requested special charge shall be given by the court if it does not require qualification, limitation or explanation, and if it is wholly correct and pertinent. It need not be given if it is included in the general charge or in another special charge which is given. LSA-C.Cr.P. art. 807.
The charge objected to on the aggressor doctrine came directly from LSA-R.S. 14:21 which provides that an aggressor cannot claim the right of self-defense. Since defendant alleged that he acted in self-defense, the charge was pertinent and did not "dilute" the burden of proof. See State v. Lombard, 486 So.2d 106 (La.1986).
The charge objected to on the law of principals came directly from LSA-R.S. 14:24. There was evidence that the victim's ex-wife participated in kicking the victim that night, although she was not a codefendant. Therefore, the State was entitled to the instruction on principals. See State v. Krolowitz, 407 So.2d 1175 (La. 1981).
The instruction as to the cause of death was: "It is not essential that the act of defendant should have been the sole cause of death. If the conduct of defendant hastened the termination of life or contributed directly or indirectly to the death in a degree sufficient to be a clearly contributing cause, that is sufficient cause in fact." State v. Mosely, 475 So.2d 76 (La. App. 2d Cir.1985). This instruction is consistent with the defense that defendant was not the only person who struck Dupuy, the defense that Dupuy's alcoholism caused his death and the instruction on principals. The instruction was pertinent and correct. See State v. Mosely, supra.
Therefore, these assignments lack merit.

NOS. 21 and 22SUFFICIENCY OF THE EVIDENCE
By these assignments, defendant contends there was insufficient evidence to support his conviction and that every reasonable hypothesis of innocence was not excluded. The standard for appellate review in determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). When reviewing a conviction based on circumstantial evidence, it must be determined when viewing the evidence in the light most favorable to the prosecution that a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence has been excluded. State v. Austin, 399 So.2d 158 at 160 (La.1981).
The State presented two eyewitnesses to the fact that defendant, after being threatened by Dupuy, knocked him down and stomped on his stomach. Three medical experts testified that Dupuy died from traumatic pancreatitis and that the injuries were probably caused by the victim being struck in the abdomen while lying on his back. Defendant's version of the facts, that he tried to act as a peacemaker between Dupuy and his wife, that he knocked Dupuy down when he thought Dupuy was trying to pull a gun on him and that he merely placed his foot on Dupuy's chest to prevent him from reaching for a gun, was *504 uncorroborated by any witness's testimony except defendant's. Also, no gun was seen that night.
When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by defendant's own testimony, that hypothesis falls and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Ledet, 458 So. 2d 1024 (La.App. 3d Cir.1984), writ denied, 462 So.2d 1263 (La.1985). Here, the medical witnesses completely excluded alcoholism as the cause of Dupuy's pancreatitis. Defendant's theories of self-defense and that someone else, unknown, fatally injured Dupuy after he left the Chalet Lounge, were unsubstantiated. The evidence, viewed in the light most favorable to the prosecution, supports the manslaughter conviction.

DECREE
Accordingly, for the reasons assigned, the judgment of the trial court is affirmed.
AFFIRMED.