482 So.2d 191 (1986)
STATE of Louisiana
v.
Robert FELTON, Jr.
No. KA-3754.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Patricia E. Black, Asst. Dist. Atty., H.T. Cox, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
Martin E. Regan, Jr., New Orleans, for defendant-appellant.
Before GARRISON, CIACCIO and WILLIAMS, JJ.
WILLIAMS, Judge.
Defendant, Robert Felton, Jr., was convicted on March 12, 1985, with theft of goods valued at $150.00, a violation of R.S. 14:67. On March 19, 1985, the defendant was sentenced to a term of two (2) years, and on the same date, the state filed a bill of information charging him as a multiple offender under 15:529.1. Hearing on the multiple bill was set for March 27, 1985. On March 22, 1985, prior to the multiple bill hearing, the defendant moved for and was granted an order of appeal. On April 3, 1985, the initial hearing having been postponed, the original sentence was vacated and the defendant was sentenced as a second offender to three (3) years at hard labor in the custody of the Department of Corrections.
*192 FACTS
On September 21, 1984, at approximately Noon, Albert Lussey, an employee at the City of New Orleans Traffic Sign Shop, 2852 Lafitte Street, observed a blue truck exit the shop area with two seventeen foot aluminum light poles that were apparently taken from the sign shop. Lussey immediately notified Joseph Maggio, an employee in the signal shop, about the incident and asked whether the poles had been requisitioned by a contractor. Soon thereafter, Stanley Tassin, Lussey's subordinate, notified Lussey and Maggio of the missing poles and at that time, they determined that the poles had been taken without permission.
Tassin then drove several blocks to Mid-South Southern Scrap Company, 2525 Lafitte Street, where he saw a blue truck with two aluminum poles resting on the top of the truck cab. Tassin stated that he observed the poles at Southern Scrap 10-15 minutes after the truck left the sign shop. He returned and related to Maggio what he had seen. Maggio then called Robert April at Southern Scrap and requested that he delay the defendant so that he could notify the police. When Maggio arrived with the police at Southern Scrap, the two poles were on the premises, but the defendant was no longer there.
Carl Lamarque was employed at Southern Scrap on September 21, 1984, and he observed the defendant arrive driving a blue El Camino truck with two seventeen foot aluminum poles in the back. He stated that he knew the defendant because he was a regular customer and made an attempt to detain him until the police arrived. The defendant, however, left when Lamarque informed him that he could not purchase the poles because he was aware that they had been taken without authorization from the signal shop.
The defendant returned to Southern Scrap on October 8, 1984. The police were notified and the defendant was arrested by Detective Martin Defillo while at Southern Scrap.
SUFFICIENCY OF EVIDENCE/ASSIGNMENT OF ERROR
Defendant's primary argument is that the State failed to prove beyond a reasonable doubt that the value of two the aluminum light poles exceeded a combined value of $100.00, thereby rendering the theft a misdemeanor rather than a felony. He asserts that the trial court erred in denying the defense's objection to Maggio's qualifications to render an expert opinion relating to the value of the aluminum light poles.
As set forth in State v. Pittman, 368 So.2d 708, 710 (La.1979);
"The elements of the crime of theft (LSA-R.S. 1467) are (1) that there be a misappropriation or taking; (2) that the misappropriation or taking be of a thing of value, (3) that the thing belonged to another, and (4) that the misappropriation or taking be with the intent to deprive the other permanently of that which is the subject of the taking."
Valuation, apart from being an essential element of a crime, determines whether the offense is punishable as a felony or misdemeanor. R.S. 14:67[1]; State v. White, 315 So.2d 301 (La.1975). In order to satisfy due process standards, the standard of review for sufficiency of evidence, viewed in a light most favorable to the prosecution, is whether a rational trier of fact would find that the essential elements of the crime (in *193 this case valuation) were proved beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
Defendant relies exclusively on the testimony of Lamarque, who, without objection, stated that in September, 1984, the same month as the theft, scrap aluminum was selling for $.25 per pound. He stated that since the combined weight of the two poles was approximately 200 pounds, the total net value of the two light poles based on the product of these two figures would be $50.00.
Maggio was introduced by the State as an expert witness. He testified that he had worked with this type of aluminum pole for eight (8) years. The trial court ruled that he was unqualified to give an exact purchase price of the poles, but could give the "general cost" based on his experience in ordering and purchasing the poles for the City of New Orleans. Maggio stated that, in his opinion, their combined value exceeded $500.00.
Opinion testimony by a witness is generally inadmissible. R.S. 15:463. When the court addresses the question involving knowledge obtained only by special training or experience, persons having such special training or experience may render opinions as expert testimony. R.S. 15:464. The requisite qualification of an expert witness is established by R.S. 15:466:
"The test of the competency of an expert is his knowledge of the subject about which he is called upon to express an opinion, and before any witness can give any evidence as an expert his competency to testify must have been established to the satisfaction of the court."
Competency of an expert witness is a question of fact within the discretion of the trial judge and his assessment of the qualifications of an expert will not be disturbed unless clearly wrong. State v. Watson, 423 So.2d 1130 (La.1983); State v. Michel, 422 So.2d 1115 (La.1982).
We find that Maggio, in light of his extensive experience in his particular field, was properly qualified to give an expert opinion on the issue of the general cost of the aluminum light poles. Thus, it was proper for the jury to hear his testimony as well as that presented by Lamarque in order to reach a factual determination of valuation. Defendant's objection is directed more to the weight to be accorded Maggio's testimony rather than its admissibility. It is the function of the jury, not this court, to assess the credibility of a witness and the weight to be given to his testimony. Furthermore, even if Maggio's figure was arguably erroneous, the jury did not rely exclusively upon either figure given by Maggio or Lamarque, but chose, instead, to reach an intermediate value of $150.00.
We, therefore, conclude that this assignment of error is without merit and affirm defendant's conviction.
ERRORS PATENT
We do find that an error patent does exist in the sentencing of the defendant as a multiple offender. The order of appeal was signed by the trial judge on March 22, 1985, whereas the defendant's re-sentencing as a multiple offender took place on April 3, 1985. The issue of whether the trial court was divested of jurisdiction to enhance the defendant's sentence pursuant to La.R.S. 15:529.1, the multiple offender statute, after the order of appeal had been signed was referred to the court en banc for its consideration. This panel found that the particular language of 15:529.1 authorizing the filing of the multiple bill "at any time, either after conviction or sentence" suggests that the trial court is vested with jurisdiction to conduct a multiple bill regardless of whether an appeal has been taken by the defendant. This interpretation conflicts with Article 916 which states that "[t]he jurisdiction of the trial court is divested and that of the appellate court attaches upon the entering of the order of appeal." It was our opinion that since the multiple offender statute deals with this subject matter more explicitly than article 916 which speaks of the same subject matter in general terms, then, through a statutory construction analysis *194 similar to that employed by the First Circuit in State v. Bell, 471 So.2d 1190 (La. App.3d Cir.1985), 15:529.1 would prevail. By majority vote en banc on this matter, the court chose not to adopt this reasoning and, instead, followed State ex rel, Tuesno v. Maggio, 441 So.2d 1226 (La.1983) and State v. Sharper, 383 So.2d 1248 (La.1980), which holds that the court is without jurisdiction to enhance after an order of appeal has been entered. For this reason, we are constrained to hold under Tuesno and Sharper the trial judge erred in sentencing the defendant. Accordingly, the enhanced sentence is set aside and the original sentence of two (2) years is reinstated. In the event the defendant is re-sentenced as a multiple offender, his right to appeal his enhanced sentence is reserved to him.
CONVICTION AFFIRMED; REMANDED FOR RE-SENTENCING.
NOTES
[1] ... "Whoever commits the crime of theft when the misappropriation or taking amounts to a value of five hundred dollars or more shall be imprisoned, with or without hard labor, for not more than ten years, or may be fined not more than three thousand dollars, or both.

When the misappropriation or taking amounts to a value of one hundred dollars or more, but less than a value of five hundred dollars, the offender shall be imprisoned, with or without hard labor, for not more than two years, or may be fined not more than two thousand dollars, or both.
"When the misappropriation or taking amounts to less than a value of one hundred dollars, the offender shall be imprisoned for not more than six months, or may be fined not more than five hundred dollars, or both...."