BARRY, Judge.
The defendant was convicted of illegal possession of stolen property worth more than $500.00. La.R.S. 14:69. He pleaded guilty to a multiple bill and was sentenced to 3-V3 years at hard labor. He also pleaded guilty to simple escape and was sentenced to six months at hard labor to run consecutively.
FACTUAL TESTIMONY
Mrs. Claiborne Moulton testified that a significant amount of silverware was stolen from her house. She first noticed some items missing on August 6, 1985 and contacted the police, then inventoried the remaining pieces and had them photographed. On November 27, 1985 Mrs. Moulton reported additional stolen items.
Lt. Robert Guidry testified there was no sign of a forced entry so he obtained the names of people who had access to the *1048 Moulton house. He put the names through a computer and discovered the defendant sold numerous pieces of silverware to the 305 Shop on March 14, 1985. Lt. Guidry got a list of the property that was sold to the 305 Shop and Mrs. Moulton identified her stolen property. Lt. Guidry obtained a search warrant for the 305 Shop, and met the owner, Louis Hernandez, but did not recover any of the property.
Mr. Hernandez testified that he purchased old French silverware and other items from the defendant on March 14, 1985 and he identified the voucher which listed the items:
Nine ice tea spoons; five cream spoons; eleven dinner forks; two luncheon forks; one salad fork; four demitasse spoons; two dessert spoons; three serving spoons; two larger serving spoons; one meat fork; one salad fork (another pattern); one knife; one demitasse spoon (another pattern); one cocktail fork; one pie server; five sherbert spoons; one pair of candlesticks; six bread and butter plates, one engraved with Carnival Invitation Golf Tournament-February 1, 1932, Fourth Flight Runner Up and an invitation.
Mr. Hernandez filled out the form based on information on the defendant’s driver’s license and the defendant signed the store’s purchase voucher.
Mr. Hernandez testified he was suspicious of the defendant, gave him $200.00 and agreed to pay $50.00 after clearance by the police department. The defendant never returned for the $50.00. Mr. Hernandez testified the defendant claimed to have 1,000 additional ounces of silver and listed 816 State St. as his address and 895-7013 as his telephone number. Mr. Hernandez called the phone number the next day, but no one named East lived there.
The defendant told Mr. Hernandez that his mother inherited the silverware from a grandparent named Harrison. Mr. Hernandez wrote Harrison on the voucher because he was suspicious. He said the police gave him permission to dispose of the items by the end of June, 1985 and he sold them to be melted.
Mr. Hernandez was accepted as an expert in silver appraisal. He testified that the items he purchased for $250.00 had a value of $4,000.00 and a resale value of between $1,500.00 and $2,000.00.
After viewing photos of Mrs. Moulton’s remaining bread and butter plates, Mr. Hernandez stated that the bread and butter plates he bought were identical to the ones in the photographs.
Mrs. Moulton testified that “[e]very single one” of the items listed on the purchase voucher were her property. She especially noted the engraved golf trophy her father won in 1932. Although Mrs. Moulton was confused by the lists which defense counsel used — one had the stolen items as of August and the other those items still in the house, she clearly identified all of the items on the voucher as her property. Some items were not included on the list of stolen property sent to her insurance company, but Mrs. Moulton explained that list was compiled from memory and she had forgotten many items.
Lt. Guidry testified that he arrested the defendant at his residence on December 4, 1985, advised him of his rights, the defendant signed a waiver of rights form, and stated he did not want an attorney. Lt. Guidry said the defendant confessed he stole the silverware and sold it to the 305 Shop for $200.00, and also admitted the property belonged to Mrs. Moulton and he took it from her house.
Detective Kevin Baker testified that he worked with Lt. Guidry and was present when the defendant was arrested, advised of his rights, signed the waiver form, and when the defendant made his statement.
Both detectives said the defendant did not want to give a written or taped statement, however, the voluntary oral statement was taken down by Lt. Guidry. There was a joint stipulation that Officer James Dupre of the NOPD Crime Lab, an expert in handwriting comparison, would have testified that the signature on the 305 Shop voucher was the same signature on the waiver form.
*1049 The defendant testified that about twelve people had access to the Moulton home where he lived for a time. Mrs. Moulton’s sister’s boyfriend lived in the house at various times and had access to it. The defendant admitted that he sold a box of silverware to the 305 Shop on March 14, 1985, but claimed he obtained the silver from Ronald St. Claire, whom he met at the Jefferson Parish Correctional Center. According to the defendant, St. Claire had no identification or driver’s license and he asked the defendant to sell the silver he had inherited from his grandmother. The defendant said he sold the silver and gave the money to Ronald.
The defendant claimed that he told the police that he had no knowledge of the theft. He testified that he had asked for an attorney before discussing the source of the silver. Although he conceded that he signed the waiver form, he claimed that he never read it and thought it merely stated that he understood his rights.
The defendant admitted a prior guilty plea to attempted simple robbery. He also conceded that he gave Mr. Hernandez an incorrect address and telephone number on the voucher. When questioned as to the name “Harrison” on the voucher, he stated that was the first name that came into his mind and the street where Ronald was staying. He admitted that he had told Mr. Hernandez that he might be able to get more silver; however, he said that so Mr. Hernandez would trust him and take the silver. He said he may have told Mr. Hernandez that his grandfather’s name was Harrison.
Virginia Moulton, the defendant’s girlfriend, testified that her sister’s boyfriend and other people had access to the house. She said a key to the house was kept under the front door mat. She stated her grandfather S name was Harris and the defendant knew that.
The defendant assigns three alleged errors:
(1) The court erred by accepting Louis Hernandez as an expert in silverware appraisal and allowing him to give his opinion as to the value of silver items;
(2) The State failed to prove beyond a reasonable doubt the essential elements of the crime;
(3) The court erred by accepting the defendant’s admission on the multiple bill without first advising him of his rights under La.R.S. 15:529.1.
ASSIGNMENT NO. 1
Opinion testimony is generally inadmissible under La.R.S. 15:463.[1] Persons having special training or experience may render opinions as expert testimony. La.R.S. 15:464. The test of an expert’s competency is his knowledge of the subject which must be established to the court’s satisfaction. La.R.S. 15:466. The competency of an expert is a question of fact within the discretion of the trial judge and his/her assessment will not be disturbed on appeal unless it is clearly wrong. State v. Michel, 422 So.2d 1115 (La.1982); State v, Felton, 482 So.2d 191 (La.App. 4th Cir.1986). See also State v. Martin, 543 So.2d 1020 (La.App. 3rd Cir.1989), writ denied 550 So.2d 625 (La.1989).
Experience alone is sometimes enough to qualify as an expert. It is not always necessary that a witness have formal training or education to qualify as an expert in a certain field. Roper on Behalf of Roper v. Gelsomino, 507 So.2d 868 (La.App. 5th Cir.1987), writ denied 508 So.2d 824 (La.1987).
*1050 In State v. Felton, 482 So.2d at 193, this Court upheld the trial court's decision that an employee with eight years of experience in the traffic signal shop and in purchasing aluminum poles (the alleged stolen property in that case) was qualified to give an expert opinion as to the cost of the poles. In State v. Davis, 445 So.2d 163 (La.App. 3rd Cir.1984), the Third Circuit did not find clearly wrong the trial court’s acceptance of a witness as an expert on the value of a typewriter allegedly stolen from a school. The witness was a parish school board office machine repairman with several years of experience on that make of typewriter and in appraising used and damaged machines to determine repair costs.
Mr. Hernandez testified that he had twenty-five years experience in buying silver and had made a couple of hundred appraisals of silverware over a five year period. Although he had two years of college with no special training in silverware, he did thirty to forty appraisals yearly for the Whitney Bank and had done about five appraisals for Aetna Insurance Company.
We conclude the trial court properly qualified Mr. Hernandez as an expert witness and allowed him to estimate the value of the silverware he purchased from the defendant.
This assignment lacks merit.
ASSIGNMENT NO. 2
The defendant argues that the State did not prove the value of the stolen property to be $500.00 or more. He also claims the State failed to prove that he knew or should have known that the property was stolen, a necessary element of La.R.S. 14:69.
After reviewing all the evidence in the light most favorable to the prosecution, as a reviewing court, we must determine whether a rational trier of fact could have found that the essential elements were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Captville, 448 So.2d 676 (La.1984).
When a conviction is based on circumstantial evidence, La.R.S. 15:438 provides that the evidence must exclude every reasonable hypothesis of innocence. The test for sufficiency in circumstantial evidence is whether the evidence produces the moral conviction which would exclude every reasonable doubt. State v. Shapiro, 431 So.2d 372 (La.1982).
La.R.S. 14:69 A provides:
Illegal possession of stolen things is the intentional possessing, procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
The State must prove beyond a reasonable doubt that the item was stolen, that the item had a value (here over $500.00), that the defendant knew or had good reason to believe the item was stolen, and that the defendant intentionally procured, received, or concealed the item. State v. Wilson, 544 So.2d 1300 (La.App. 4th Cir.1989). See also State v. Walker, 350 So.2d 176 (La.1977).
In State v. Price, 454 So.2d 377 (La.App. 4th Cir.1984), writ denied 458 So.2d 126 (La.1984), this Court found sufficient evidence to support the defendant’s conviction when he pawned a gold necklace which had been stolen the day before and he accepted $20.00 for the necklace even though it was valued at $180.00. In State v. Stevenson, 466 So.2d 707 (La.App. 4th Cir.1985), writ denied 468 So.2d 1205 (La.1985), this Court affirmed a defendant’s conviction who had pawned several pieces of jewelry including a ring which had been reported stolen earlier that day and had initials that did not match those of the defendant.
In this case the defendant admitted he sold silverware to the 305 Shop on March 14, 1985, the shop owner identified him, and he used his driver’s license for identification. The shop owner testified that the silverware he bought for $250.00 was worth approximately $4,000.00. The defendant took $200.00 cash and never returned for the additional $50.00.
*1051 Although the items on the shop’s voucher and the items which Mrs. Moulton reported stolen to the insurance company (a list composed from memory) were not identical, Mrs. Moulton clearly stated that every single item of silverware on the voucher was her property. She specifically noted the silver which commemorated her father’s victory at a golf tournament in 1932.
Mr. Hernandez stated that the bread and butter plates which Mrs. Moulton still had (as seen in a photo) were the same pattern which he purchased. Although there were discrepancies as to other items, the jury evidently concluded that the items which the defendant sold to Mr. Hernandez had been stolen from Mrs. Moulton’s house. The jury clearly disbelieved the defendant’s story that he had sold the silverware for a friend he had met in prison. The jury also heard testimony from two police officers who stated the defendant confessed to the theft of silver from Mrs. Moulton and its sale to Mr. Hernandez.
Viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. The trier of fact properly concluded that the evidence excluded every reasonable hypothesis of innocence.
This assignment lacks merit.
ASSIGNMENT NO. 3
The defendant claims the trial court erred by accepting his guilty plea to the multiple bill without first advising him of his statutory rights. At the multiple bill hearing defense counsel informed the court that the defendant would admit to the information contained in the multiple bill. After the defendant was sworn the following transpired:
BY THE COURT:
Do you understand that you are pleading guilty as a multiple offender, having previously been convicted of attempted simple robbery?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
In that simple robbery, you pled guilty to, on the 10th day of September in the year, 1984?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
You are one and the same person?
BY THE DEFENDANT:
Yes, sir.
BY THE COURT:
And are you one and same person that was found guilty on the 2nd day of July, 1986, by a jury, in this Section of court—
BY THE DEFENDANT:
Yes.
BY THE COURT:
[sic] Yes, sir.
BY THE COURT:
Based on the admissions of the defendant, I find him a multiple offender. Are you ready for sentencing?
BY MS. WATTERS:
Yes, sir.
BY THE COURT:
It’s the sentence of this court to sentence the defendant to three and a third years in the Department of Corrections, credit for any time served....
Although the defendant correctly argues on appeal that the trial court failed to advise him of his right to remain silent and his right to a hearing at which the State would have the burden of proving his identity as a multiple offender, defense counsel did not make an objection at the multiple bill hearing. The State argues that in the absence of an objection, the defendant did not preserve his right to appeal his multiple bill adjudication.
The State cites State v. Nelson, 544 So.2d 13 (La.App. 4th Cir.1989), in which this Court was confronted with a defendant’s argument that the State failed to prove he was advised of his right to a jury trial before pleading guilty to the predicate offense being used in the multiple offender adjudication. Relying upon State v. Talbert, 416 So.2d 68 (La.1982) and State v. Whittaker, 496 So.2d 1103 (La.App. 4th *1052 Cir.1986), this Court stated that a defendant who failed to object was relegated to post conviction relief. See also State v, Davis, 499 So.2d 1311 (La.App. 4th Cir.1986).
We find those cases involving the absence of an objection when there were omissions at the multiple bill hearing relative to the predicate offense distinguishable from the instant case. The only issue here is whether the defendant was properly cautioned as to his statutory rights before he pleaded guilty to the multiple bill.
This Court does not ordinarily require that an objection be made at the multiple offender hearing relative to advising the defendant as to his rights in order to preserve that issue on appeal. See State v. Desmond, 524 So.2d 147 (La.App. 4th Cir.1988).
In State v. Martin, 427 So.2d 1182 (La.1983), the Supreme Court was faced with two arguments raised for the first time on appeal. One involved the defendant being sentenced as a multiple offender without being cautioned as to his rights and the other involved a complaint as to the use of a minute entry of the guilty plea in the predicate offense. As to the second argument the Supreme Court stated that the defendant who failed to object to a possible deficiency at the hearing when the problem could have been easily resolved was relegated to post conviction relief. Although the Court noted that neither the defendant nor his attorney objected to the propriety of the enhanced sentence after he was allegedly not properly cautioned of his rights, the Supreme Court did resolve the issue on appeal.
In State v. Johnson, 432 So.2d 815, 817 (La.1983), the Supreme Court held:
This section of the statute clearly recognizes that the defendant, if he chooses, has the right to remain silent. Once the defendant chooses to remain silent the state must then by competent evidence prove the elements of R.S. 15:529.1 before the defendant can be sentenced as an habitual offender. Before the defendant chooses to acknowledge or confess in open court that he has been previously convicted of a felony, the statute requires that he first be cautioned by the trial court as to his rights. R.S. 15:529.-1(D) specifically provides that defendant be advised by the court of his right to a ‘formal hearing’ and to have the state prove its case. State v. Martin, 427 So.2d 1182 (La.1983). Further, this section implicitly provides that the defendant should be advised, by the court, of his statutory right to remain silent.
The defendant was not informed of his rights under La.R.S. 15:529.1 before he admitted the prior conviction. Therefore, his adjudication as a multiple offender must be vacated and the case remanded for resen-tencing.
The defendant’s conviction is affirmed. His sentence as a multiple offender is vacated and the case remanded for resentenc-ing.
CONVICTION AFFIRMED; MULTIPLE OFFENDER SENTENCE VACATED; REMANDED FOR RESENTENCING.

. La.R.S. 15:462 to R.S. to 15:467 dealing with expert testimony were repealed by 1988 La.Acts No. 515, Section 12, § 8. 1988 La.Acts, No. 515, Section 12, § 1 enacted the new Louisiana Code of Evidence. The new Code of Evidence became effective January 1, 1989 and it governs all trials commenced on or after that date. La. C.E.Art. 702 now provides:
If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.
However, the defendant’s trial was held in 1986 before the new Code’s effective date. Therefore, the revised statutes are still relevant here.