GUIDRY, Judge.
Plaintiffs, Federated Rural Electric Insurance Cooperative and Teche Electric Cooperative, Inc., filed this suit seeking to have defendant’s worker’s compensation benefits retroactively reduced by 50% on court declaration that he had not cooperated with rehabilitative efforts provided for him by plaintiffs under La.R.S. 23:1226. While this suit was pending, plaintiffs unilaterally reduced the benefits paid defendant pursuant to R.S. 23:1221(3). Defendant answered plaintiff’s suit and reconvened seeking reinstatement of full benefits, medical expenses, and penalties and attorney's fees. The trial court concluded that: (1) plaintiffs were not entitled to a declaratory judgment as prayed for because they failed to establish that proper rehabilitation efforts were ever offered to defendant or that defendant failed to cooperate; (2) plaintiffs were not justified in unilaterally reducing benefits; and, (3) defendant (plaintiff in reeonvention) is enti- *646 tied to penalties and attorney’s fees. Additionally, the trial court ordered that plaintiffs provide defendant with proper rehabilitative services pursuant to R.S. 23:1226(D).
Plaintiffs appealed urging, in essence, that the trial court’s factual findings and conclusions of law are clearly erroneous. Specifically, appellants argue that the trial court erred in determining that the rehabilitative efforts offered to defendant were not reasonable and proper rehabilitative services within the purview of R.S. 23:1226, subd. B(3), and that defendant was not uncooperative. Further, appellants urge error in the trial court’s conclusion that defendant is entitled to temporary total disability benefits, rather than supplemental earnings benefits and in its order that further rehabilitation services be provided to defendant. Finally, appellants assert error in the trial court’s conclusion that the labor market survey conducted by Mr. Dur-lacher was unreliable such that their reliance thereon in reducing defendant’s benefits was arbitrary and capricious.
We have carefully reviewed the record and do not find clear error in the trial court’s findings of fact or conclusions of law, which are fully set forth in written reasons for judgment as follows:
“This matter began as a suit filed in June of 1987 for declaratory .judgment. Plaintiff sought a court determination under R.S. 23:1226 that compensation payments made since May 1986 should be retroactively reduced by 50% for failure of claimant, who had been injured in March 1984, to cooperate with rehabilitative services. Claimant/defendant reconvened for continuation and reinstatement of full benefits, including compensation and medical expenses, and for costs, penalties and attorney’s fees.
“An additional issue was added to the matter when the plaintiff reduced compensation payments in December, 1987. Plaintiff contends that the provisions of R.S. 23:1221(3) authorize the reduction because of the availability of employment within the claimant’s capabilities.
“Trial began March 24, 1988 and continued on November 21, 1988. The matter was taken under advisement.
“Some facts in the matter are undisputed. On March 13, 1984, John Simmons, Jr., claimant/defendant hereinafter referred to as Simmons, was injured in the course and scope of his employment as a lineman for Teche Electric Cooperative, Inc. He sustained serious damage to his left knee. Corrective surgery was performed by a local orthopedic surgeon, Dr. Harold Hebert. One year later Simmons was referred to Dr. Charles A. Strange, Baton Rouge; he performed additional surgical procedures on May 1, 1985.
“In November of 1985 Dr. Strange determined that the defendant had reached a plateau. Because of the permanent damage, Dr. Strange attached to him a 40% disability. Dr. Strange made the determination, which was accepted by all parties, that Simmons was unable to fulfill the physical requirements of his former employment. As for future medical needs, Dr. Strange left open the possibility of a knee fusion. Simmons returned for a final check-up in November of 1986. All medical charges for the services were paid by plaintiff.
“Plaintiff then provided rehabilitative services to Simmons under the provisions of R.S. 23:1226.
A. When an employee has suffered an injury covered by this Chapter which precludes the employee from earning wages equal to wages earned prior to the injury, the employee shall be entitled to prompt rehabilitation services ...
E. When it appears that rehabilitation is necessary and desirable to restore the injured employee to suitable employment, the employee shall be entitled to reasonable and proper rehabilitation services for a period.... Refusal to accept rehabilitation as deemed necessary by the director or the court shall result in a fifty percent reduction in weekly compensation, including supplemental earnings benefits pursuant to R.S. 23:1221(3), for each week of the period of refusal.
*647 “The services provided were time consuming and expensive. They were unsuccessful. The plaintiff contends that they were unsuccessful because Simmons did not cooperate; Simmons contends that they were unsuccessful because they were inappropriate. Additionally Simmons contends that he was denied proper medical services for his alcoholism which was reactivated by the injury he sustained.
“After two court days of testimony, and additional testimony by deposition, the Court, with the advantage of hindsight, has made its own determination and evaluation of the rehabilitative effort. Based upon this view, the Court has sought to answer the two questions presented by this case. First, did the claimant fail to cooperate in rehabilitation, entitling the plaintiff to reduce benefits? Second, is there reasonable work available entitling the plaintiff to reduce payments to supplemental earnings benefits?
“There are two major areas in which the plaintiff and the claimant had entirely different views of the claimant’s abilities: his lifting capability and his education level. A review of the events of December 1985 through December 1897 [sic] reveals how these differing opinions developed.
“On September 4, 1985, near the end of Dr. Strange’s treatment of the claimant, the doctor completed a Physical Capacities Form supplied to him by IRA. [Defendant’s Exhibit 1] This document became the operative evaluation for the rehabilitation which followed. Item number 1 on the Form states that Simmons ‘can stand/walk 0-2 hours at one time, 2-4 total hours during day.’ Item 4 states that Simmons ‘can lift/carry frequently 10-15 lbs., occasionally 20 lbs.’
“Subsequently the plaintiff came to believe that this evaluation was incorrectly restrictive. In fairness, plaintiff probably received encouragement for this view from Dr. Strange. Dr. Strange testified in his deposition of April 1987 that ‘[Simmons] could lift up to 40 or 50 lbs. without much trouble’. Much of the plaintiff’s conduct can be explained by the fact that this greater lifting capacity was taken by the plaintiff as correct. But there is no evidence that the doctor officially changed his position or conveyed a greated capacity to Simmons. In fact, Simmons denies that he has this greater ability.
“The rehabilitative services to the claimant were provided by two rehabilitation specialists employed by International Rehabilitation Associates, Inc., Lafayette, Louisiana. This company is also known as IRA and Intracor. Both of these specialists testified at trial.
“Ken Sutton, the first specialist, testified that he first met Simmons in June of 1985. Simmons was still under the care of Dr. Strange but had been released from physical therapy to exercise at home. Sutton made an initial evaluation of Simmons which proved to be erroneous. It is the opinion of the court that this erroneous assessment is one cause of the failure of the rehabilitation effort.
“Simmons appeared to Sutton as an otherwise healthy man with a knee injury, 32 years of age, who had completed three years of college. In fact, Simmons was an alcoholic who had been previously hospitalized for his addiction. Simmons had attended Grambling as a football player; in his three years he had passed no courses of substance. When testing was performed a year later, it became apparent that he had English and math abilities at the fifth grade level.
“During the first six months of ‘rehabilitation’, Sutton concentrated on trying to get Simmons to enroll at Teche Area Vocational School. Sutton apparently knew that Simmons’ former employer would not rehire him, but Simmons did not have this information. Whether hindered by this false hope or his own realization that he did not have the background for success at TAVT, Simmons did not take the necessary steps for entrance.
“Then Simmons returned to alcohol. Sutton changed his focus from retraining to attempts to get him into treatment at Acadiana Mental Health and AA. Although there were moments of success, basically the problem remained uncontrolled. In June of 1985 [sic] Sutton *648 changed his focus again. Equipped with a better understanding of the capacities of the client, Sutton abandoned retraining and attempted to locate available, more limited, jobs. The testimony establishes that Simmons failed to pursue the openings which Sutton claimed to have found. The defense contends that the positions were not feasible; they were largely based upon an assumption that Simmons could lift 40 lbs. Dr. Strange may have given Sutton the impression that this was the correct capability but the 20 lb. limit had by this time become lodged in Simmons’ mind. The job suggestions made by Sutton appeared inappropriate.
“In July of 1987 Sutton left his job at IRA. Simmons’ case was taken over by Allen Durlacher. The services rendered by this second ‘specialist’ cannot be described as rehabilitation. Durlacher conducted a ‘labor market survey’; from this survey he determined that there were five locally available jobs which were possible for Simmons: cashier at Delta Marketing; records clerk at Gulf Air; sewing machine operator at Jeanerette Mills; management trainee at Sonic; a newspaper carrier.
“Cross examination by defendant’s attorney revealed that if the defendant had the 20 lb. limitation of Dr. Strange’s written physical evaluation, all but the job of cashier were admittedly beyond his capabilities. Cross examination also revealed that Dur-lacher gained his knowledge of Simmons from the file; he never met him. He gained his knowledge of the jobs from want ads; he never dealt directly with the potential employers. He made no determination of the actual requirements of this particular cashier’s job nor of any of the others.
“Additionally, Durlacher lacks the qualifications essential for an opinion on which the Court can rely. His only qualification is experience — he was employed as a counselor for six years at the State of Louisiana Department of Labor — and the details of that experience were not described. When the plaintiff attempted to qualify Durlacher as an expert in vocational counseling, cross examination revealed that he is presently enrolled in a graduate program at Southern University in this field but has no completed related degree. He holds no licenses. Employment at In-traeor required no prerequisite courses; the company has no in-house training.
“It is the opinion of the Court that the plaintiff failed to establish that these jobs were actually possible or available. And the services which Durlacher provided, if any, cannot be the rehabilitation services intended by the law.

“Declaratory judgment: Is plaintiff entitled to reduce benefits for failure of claimant to cooperate in rehabilitation?

“There is very little law on the subject of what services the employer, or his insurer, is required to provide in the way of rehabilitation. Simmons’ attorney has cited one case which, although based upon another statute, does provide insight. In New Orleans (Gulfwide) Stevedores v. Turner, 661 F.2d 1031 (1981) the Fifth Circuit Court of Appeals was called upon to evaluate the rehabilitative services offered under the Longshoremen’s and Harbor Worker’s Compensation Act. The standards discussed in that case proved useful to this Court.
“After a full review of the testimony presented in this matter, the Court is of the opinion that rehabilitation in the meaning of the legislation has never been provided. Services began without proper evaluation of the client. By the time an accurate evaluation had been made, the relations between the [sic] Sutton and Simmons had deteriorated beyond repair. Although Simmons did not follow through on the guidance he was given, there was no willful failure to cooperate. For that reason the Court does not find that the employer is entitled to reduce the benefits.
“Nor, however, was there any failure to provide reasonable medical care. It is the contention of the claimant that the plaintiff did not provide treatment for alcoholism which had been activated by the accident and resulting disability. Clearly the alcohol problem predated the injury. The claimant was referred to the Acadiana Mental Health which provides respected *649 services. It is the opinion of the Court that the employer was not under any obligation, at that time, to provide private, in-patient care for a pre-existing condition.
“The Court finds that at this time the claimant is still temporarily totally disabled as a result of the injury. The Odd Lot Doctrine applies because he can perform ‘no services other than those which are so limited in quality, dependability or quantity that a reasonably stable market for them does not exist.’ Thomas v. Pallet, 493 So.2d 1267 (La.App. 3rd Cir.1986). The discouragement resulting from the years of inactivity has probably become a difficult, but not impossible, problem to solve.
“This determination means that there must be another attempt at rehabilitation. R.S. 23:1226(D). Although there is presently no accepted standard for this service, at the very least it must begin with testing and evaluation. It certainly involves counseling as well. It must be appropriate for this claimant.
“Although not previously required, at this point the best hope for fairly rapid rehabilitation probably lies with an in-patient, 28-day, psychiatric/alcohol treatment program. That course of rehabilitation would justify a far shorter period of rehabilitation obligation, perhaps two months instead of nine.

“Was the plaintiff justified in reducing payments to supplemental earnings benefits because of available employment?

“As discussed above, the Court is not persuaded by the testimony of Durlacher that there are, at this time, jobs reasonably available within the claimant’s capacity. Durlacher made no actual study of the specific requirements of the positions which he proposed. He based his recommendations upon his own notions of what the jobs entailed; he lacks the experience or training to make these determinations.
“Although the Court comes to this conclusion without regard to the dispute over the actual lifting capacity of the claimant, it is the opinion of the Court that the Physical Capacities Form which restricts the claimant to 20 lb. lifting is the most accurate evaluation of his ability. This conclusion is based upon two factors. First, the evaluation was made at the conclusion of treatment by the treating physician; there has been no further examination by him. Second, it is consistent with the lay testimony.
“Even if the greater lifting capacity were possible for this claimant, the plaintiff has failed to make the requisite proof of available employment. For this reason the Court finds that the reduction of December 1987 was wrong.

“Penalties and Attorney’s fees.

“Given the above determinations, the question remains whether the claimant is entitled to attorney’s fees and penalties. The 1983 amendment to the Worker’s Compensation Act uses different language in describing the standard to be applied for assessing penalties from that to be applied for awarding an attorney’s fee.
“The standard for attorney’s fees is found at R.S. 23:1201.1 [sic]. ‘... Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance failure [sic] is found to be arbitrary, capricious or without probable cause, subjects the employer or insurer to payment of all reasonable attorney’s fees for the prosecution and collection of such claims.’ Theriot v. American Employees Insurance Company, 482 So.2d 648 (La.App. 3rd Cir.1986).
“On the other hand, penalties will be assessed against the employer for failure to pay benefits unless the employee’s right to such benefits has been reasonably controverted by the employer or his insurer. La.R.S. 23:1201(E). The test to determine whether the employer (insurer) has reasonably controverted the employee’s rights to benefits is whether the employer or his insurer had sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. Chelette v. American Guarantee and Liability Insurance, Inc., 480 So.2d 363 (La.App. 3rd Cir.1985). It is not readily apparent whether these two standards are in fact different. In any event, *650 the standards require a close analysis of each worker’s compensation case.
“In June of 1987, faced with an unsuccessful rehabilitation of the claimant, the plaintiff sought a court determination (a declaratory judgment) • on the issue of whether benefits could be terminated or reduced. The conduct was meritorious. As discussed above, the Court does not find that there was any denial of medical benefits.
“In December of 1987, before a decision on the declaratory judgment could be obtained, plaintiff unilaterally reduced benefits. The action was taken based upon the labor market survey conducted by Durlacher. For reasons discussed above, this Court is persuaded that Durlacher’s survey is patently without value. To rely upon it is arbitrary, capricious and without probable cause. The information contained in it does not reasonably controvert the employee’s right to benefits. For this reason the court awards both penalties and attorney’s fees for this unwarranted reduction.
“Penalty attorney’s fees and 12%, 23:1201(E), penalties are not available, however, for the entire litigation. The pre-1987 conduct of the plaintiff was reasonable under the circumstances. The 12% statutory penalties are assessed only on the amounts due because of the December 1987 reduction. Due to the fact that this litigation has been protracted, has required considerable preparation, and was ably handled by counsel, the Court awards attorney's fees of $2800 for this second portion of the litigation, one half of the amount which the Court finds would be reasonable for the entire case.”
Our careful review of the evidence reveals no real dispute as to the facts surrounding the rehabilitative efforts extended to the defendant. Nor is there any real dispute that Sutton initiated his services with an inaccurate assessment of defendant’s mental capabilites and physical condition. Appellants’ real attack is on the court’s conclusion that their efforts were not “reasonable and proper rehabilitative services”, within the intendment of R.S. 23:1226, and that defendant's inactivity did not constitute a “refusal to accept rehabilitation” as that phrase is contemplated in R.S. 23:1226(E). We have considered these trial court conclusions in light of the well settled principles applicable to appellate review and conclude that such determinations are not clearly erroneous.
Appellants next argue that the weekly benefits paid to defendant after November 1985 should have been considered supplemental earnings benefits because, by that time, defendant had reached maximum medical cure and any disability remaining was permanent, not temporary. Defendant was receiving temporary total disability benefits prior to plaintiffs’ rehabilitative efforts (which began in July of 1985) and R.S. 23:1226(F) mandates that benefits continue as such during the time the employee receives rehabilitative services under the section. Therefore, defendant was entitled to temporary total disability benefits during the time rehabilitative efforts were in progress and since the trial court concluded that further rehabilitative efforts are required, which finding we affirm, defendant is entitled to continued payment of temporary total disability benefits.
Plaintiffs also urge clear error in the trial court’s determination that defendant’s actual lifting capacity is 20 lbs. in light of Dr. Strange’s testimony. We disagree. Dr. Strange evaluated defendant at the conclusion of treatment and gave a 20 lb. limit on his lifting capacity. He examined defendant again in November of 1986 and the summer of 1988. There is nothing in the record referring to the final visit other than testimony by defendant that it took place. In Dr. Strange’s deposition taken in April of 1987, he states that he thought defendant should be able to lift 40-50 lbs. However, defendant testified that he could only lift 20-25 lbs. We find no clear error in the trial court’s conclusion in this regard considering the lay testimony, Dr. Strange’s somewhat equivocal testimony and the Physical Capacities form submitted by Dr. Strange to IRA which has never been amended.
*651 Finally, appellants argue that they were not arbitrary and capricious in reducing defendant’s benefits considering Dur-lacher’s findings with regard to available jobs for defendant and their conclusion that defendant was entitled only to SEB. We find no clear error in the trial court’s evaluation of Durlacher’s report or its conclusion that it was arbitrary and capricious to rely thereon in unilaterally reducing defendant’s benefits irrespective of how they characterized the benefits owed defendant. The trial court has great discretion in determining a witness’ competence to testify as an expert and its rulings will not be disturbed absent manifest error. State v. East, 553 So.2d 1046 (La.App. 4th Cir.1989); Aaron v. Bankers and Shippers Insurance Co., 475 So.2d 379 (La.App. 1st Cir.1985).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs on appeal are assessed to appellants.
AFFIRMED.